In re Barry McKEON and Deborah McKeon.

In re John D. WHITCRAFT.

In re Joseph T. HOLMES.

In re Cheryl GREEN.

In re Annie McCRAY.

In re Asuncion CAMACHO.

In re Barbara E. MILTON.

In re James A. STEWART.

In re Larry MARSHALL and Linda Carolyn Marshall.

In re James LILES, Jr.

In re Charles MARTIN and Barbara Martin.

In re James W. POTTS and Lucille Potts.

In re David FIELD.

In re John GRECO.

In re Charlene MARTIN.

In re William C. ROSS.

In re Clarence Michael STOKES and Jannas Ann Stokes.

In re Betty D'ALLESANDRO.

In re Russell POLK.

In re Charles LEE and Gloria Lee.

In re Edgardo COSME.

In re Arlene PAYNE.

In re Hector RODRIQUEZ.

Bankruptcy Nos. 87–02873, 87–02901, 87–03154, 87–03308, 87–03565, 87–04010, 87–04111, 87–04145, 87–04212, 87–04223, 87–04339, 87–04487, 87–04631, 87–04633, 87–04713, 87–05196, 87–05240, 87–05516, 87–05554, 87–05989, 87–06038, 87–06427 and 87–06051.

United States Bankruptcy Court, D. New Jersey.

Feb. 17, 1988.

David P. Daniels, Camden, N.J., for debtors in Nos. 87–02873, 87–03154, 87–04010, 87–04111, 87–04223, 87–04339, 87–04713, 87–05196, 87–05516, 87–05554, 87–05989, 87–06427 and 87–06051.

Edward Casel by Elizabeth G. Casel, Willingboro, N.J., for Fireman's Fund Mortg. Corp. and Com. Mortg. Corp.

Wood & Broege by Peter J. Broege, Manasquan, N.J., for Robert M. Wood, Standing Trustee.

Jenkins & Jenkins by Jeffrey E. Jenkins, Haddon Heights, N.J., for debtors in Nos. 87–02901, 87–03565 and 87–04487.

Mesirov, Gelman, Jaffee, Cramer & Jamieson by Marc G. Mellman, Philadelphia, Pa., for ITT Financial Services.

Martin J. Siegel, Pennsville, N.J., for debtor in No. 87–03308.

Alvin D. Miller, P.A. by Merri R. Lane, Cherry Hill, N.J., for Security Financial & Mortg. Corp. and for Cobb Partners Financial Inc., formerly known as Arvida Mortg. Co. and Fleet Real Estate Funding Corp.

Zucker, Goldberg, Becker & Ackerman by Michael S. Ackerman, Maplewood, N.J., for New Jersey Housing and Mortg. Finance Agency and Com. Mortg. Corp.

John W. Morris, Haddonfield, N.J., for debtors in Nos. 87–04145, 87–04631 and 87–04633.

William M.E. Powers, Jr. by William M.E. Powers, III, Medford, N.J., for First Federal Sav. & Loan Ass'n of Rochester and for Citicorp Mortg. Inc. and Inland Mortg. Corp.

Jacoby & Meyers by Steven J. Popkin, Haddonfield, N.J., for debtors in No. 87–04212.

Farr, Wolf & Lyons by Kathleen M. Calemmo, Bellmawr, N.J., for Midlantic Nat. Bank South, General Motors Acceptance Corp.

Kasen, Kasen & Braverman by Robert N. Braverman, Cherry Hill, N.J., for Manufacturers Hanover.

Schulman & Greenberg by Robert S. Greenberg, Vineland, N.J., for debtor in No. 87–05240.

Beck, D'Elia & Rosenberg by Gary J. Zangerle, Cherry Hill, N.J., for Kislak Mortg. Co.

Greenberg, Shmerelson, Weinroth & Etish by James Greenberg, Camden, N.J., for Trico Mortg. Co.

Ernest R. Costanzo, Bellmawr, N.J., for debtor in No. 87–06038.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Before the court are 23 plans submitted for confirmation and 3 motions to vacate

the stay instituted in the respective proceedings. The 23 cases have been consolidated for the purposes of addressing the identical issue raised in each case, namely, the extent to which a Chapter 13 debtor may propose to deal with the claim of a mortgagee in a Chapter 13 plan where the mortgagee holds a final judgment of foreclosure issued by the state court of New Jersey. In these cases the affected mortgagees' claims are secured only by a security interest in the debtor's principal residence. For the purpose of completeness of record, this court will briefly state the salient facts in each of the cases presently before the court.

*Barry McKeon and Deborah McKeon* ("debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("Bankruptcy Code") on May 11, 1987. On March 3, 1986 a final judgment of foreclosure was entered by the Superior Court of New Jersey, Chancery Division, Gloucester County in favor of Colonial Savings & Loan Association of Roselle Park, New Jersey in the amount of $50,137.14, plus interest, taxed costs and counsel fees. On May 11, 1987 the debtors filed a Chapter 13 plan which proposed to make payments to the Chapter 13 Standing Trustee of $270.00 monthly for 48 months to cure mortgage arrears to Fireman's Fund Mortgage Corporation ("Fireman's Fund") on account of the aforesaid first mortgage on the debtors' residence located at 250A N. Brewster Road, Newfield, New Jersey in the amount of $8,000.00 and to pay unsecured creditors

10% on their claims. On July 21, 1987 Fireman's Fund, as successor in interest to Colonial Savings & Loan Association of Roselle Park, New Jersey, filed "Objections to Confirmation and a Request for Dismissal of the case or Relief from the Automatic Stay" on the grounds that: (1) on the basis of the plan as proposed it would take more than 60 months to pay the amount due Fireman's Fund; (2) 11 U.S.C. § 1322(c) provides that a plan may not provide for payments over a period longer than three years unless the court, for "cause" approves a period no longer than five years; (3) the plan does not provide for the correction of the default within a reasonable time as required by 11 U.S.C. § 1322(b)(5); (4) the amount due to the mortgage holder is $20,224.24; (5) the creditor did not receive a copy of the debtors' valuation of property and so requests interest on its claim.

On September 25, 1987, the scheduled confirmation hearing on the debtors' plan, the court denied confirmation of the plan and granted the debtors leave to file an amended plan. On October 2, 1987 the debtors filed a modified Chapter 13 plan which provides for the payment of $1,000.00 monthly to the Chapter 13 Standing Trustee for 45 months, and $19,000.00 on the 60th month. The plan provides for payment to Fireman's Fund of a "cramdown" value of the foreclosure judgment which it holds. The plan sets the "cramdown" value of the judgment at $47,200.00, based upon a valuation of real estate proposed by the debtors of $70,000.00,[1] plus

---

1. Debtors' counsel in his brief has explained the cram-down by the following example:

"Since a foreclosure judgment is a judicial lien, the debtor can avoid the lien from being fixed upon the portion of the real property which the debtor can exempt. For example, if the debtors, husband and wife, own a home in which they reside, which has a value of $50,000.00, and the mortgage has a judmgent in foreclosure in the amount of $45,000.00, the debtors may propose a plan to pay the mortgagee the amount of $29,000.00 plus interest.

|  |  |
|---|---|
| $50,000.00 | Value |
| − 5,000.00 | Cost of Sale Factor (10%) |
| $45,000.00 | |

|  |  |
|---|---|
| − 15,800.00 | Exemptions 522(d)(1) & (d)(5) |
| $29,200.00 | |

(*See* Brief in Support of Confirmation of Debtor's Plan at p. 7.)

11 U.S.C. § 522(d) provides in relevant part:

(d) The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as residence, or in a burial plot for the debtor or a dependent of the debtor.

interest at 7.5% per annum over the term of the plan, for a total payment of $56,-760.00.[2] The debtors propose no payment to First National Bank of Newfield on its second mortgage, on the basis that the Bank would receive no dividend in liquidation and accordingly is unsecured. The plan provides no payment to unsecured creditors.

On October 22, 1987 Fireman's Fund filed a motion for relief from the automatic stay of 11 U.S.C. § 362 on the grounds that a final judgment of foreclosure was entered prior to the filing, asserting (1) once judgment has been filed in a state court foreclosure action, a subsequent filing will not affect property under foreclosure and it cannot be included in the plan; (2) the mortgage must be paid within the 60–day redemption period granted by 11 U.S.C. § 108(b); (3) the court cannot confirm a plan over three years, except "for cause", and may not approve a plan that is longer than five years; (4) the plan does not provide for the correction of the default on the first mortgage, including the mortgage holders' expenses, with a reasonable time, as required by 11 U.S.C. § 1322(b)(5); (5) the amount due to the first mortgage holder is $58,949.11; (6) the plan cannot be confirmed because of a lack of good faith[3] and a lack of feasibility.[4] Fireman's Fund in its brief in opposition to the plan raises the following claims: (1) the Bankruptcy Courts are courts of limited jurisdiction and cannot pre-empt the state law right of redemption; (2) the objecting creditor is the holder of a claim secured only by a security interest in real property that is the debtor's principal residence and its rights cannot be modified by the court's approval of a plan to satisfy the objecting creditors' fore-closure judgment over the term of a plan; (3) 11 U.S.C. § 1322(b) and § 1325(a) do not permit the debtor to cram-down the objecting mortgagee's foreclosure judgment.

*John D. Whitcraft* ("debtor") filed a voluntary Chapter 13 petition on May 12, 1987. On August 2, 1987 ITT Financial Services ("ITT") filed a notice of motion to dismiss the Chapter 13 petition or in the alternative for an order vacating the automatic stay with respect to property located at 605 Kings Highway South, Cherry Hill, New Jersey to allow the creditor to proceed with foreclosure and sale of the property. That motion was heard by the court on October 14, 1987 and denied but a hearing was scheduled on confirmation of the debtor's Chapter 13 plan.

On March 28, 1984, the debtor, John D. Witcraft, and his wife, Ann T. Whitcraft, executed a mortgage on their residence to ITT in the principal sum of $25,251.83. ITT was the second mortgagee on the property and the mortgage was made pursuant to the Secondary Mortgage Loan Act of New Jersey, N.J.S.A. 17:11A–34 et seq. In October 1984 the debtor defaulted on the loan at which time ITT filed a mortgage foreclosure action in the Chancery Division of the Superior Court of New Jersey, Camden County. Default judgment was entered against the debtor in that action on February 17, 1985, and sheriff's sale was initially scheduled on May 10, 1985. However, the loan was brought current by the debtor and ITT agreed to reinstate the loan on or about June 27, 1985, at which time the foreclosure action was dismissed. Subsequent to reinstatement of the loan, the debtor again defaulted in payments. As a result, on March 2, 1987 ITT filed a mort-

---

(5) The debtor's aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided under paragraph (1) of this subsection.

**2.** Counsel for the debtor at the January 6, 1988 confirmation hearing offered to modify the plan to reflect current market rates of interest instead of the New Jersey state court judgment rate of interest which is presently 7.5% per annum. *See* R.4:42–11.

**3.** 11 U.S.C. § 1325(a)(6) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

**4.** 11 U.S.C. § 1325(a)(3) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(3) the plan has been proposed in good faith and not by any means forbidden by law.

gage foreclosure action. A judgment of foreclosure was entered by the Superior Court of New Jersey by default on April 27, 1987. Pursuant to that judgment a writ of execution of same date was forwarded to the Sheriff of Camden County which commanded the sheriff to sell the foreclosed premises to satisfy the claim of ITT of $26,735.48, together with costs which were taxed in the amount of $757.87. A sheriff's sale was scheduled for June 26, 1987. On May 12, 1987 the debtor filed his Chapter 13 petition. On June 15, 1987 ITT filed a proof of claim in this proceeding which states that no security interest is held on its claim except the mortgage held on the subject property.

On September 22, 1987 the debtor filed a Chapter 13 plan. That plan proposes payments to the Chapter 13 Standing Trustee of $600.00 monthly for 60 months. The plan provides for the curing of mortgage arrears estimated at $2,700.00 to City Federal Savings & Loan, the first mortgagee on the subject premises, and the maintenance of regular monthly mortgage payments to City Federal. The plan also provided for payment to ITT of $27,994.27, representing the foreclosure judgment amount, which payment is to be made over a sixty (60) month period. The plan also provided 100% payment to unsecured creditors which claims, according to the debtor's bankruptcy schedules filed on September 22, 1987, total $1,450.00. ITT, by letter to this court filed December 18, 1987, has objected to confirmation of the plan as contrary to the provisions of 11 U.S.C. § 1322(b) and again has requested relief from the automatic stay.

*Joseph T. Holmes* ("debtor") filed a voluntary Chapter 13 petition on May 22, 1987. On May 21, 1982, Joseph T. Holmes, the debtor herein, and Phyllis A. Holmes executed a bond and mortgage on the debtor's residence at 514 Oxford Street, Vineland, New Jersey to Clarion Mortgage Company in the principal amount of $27,-000.00. That mortgage represented a first purchase money mortgage against the property. On June 29, 1987 Lomas & Net-

tleton Co. filed a proof of claim in these proceedings on account of the aforementioned mortgage. That proof of claim states that a final judgment of foreclosure was entered on March 26, 1987 in the Superior Court of New Jersey, Chancery Division, Cumberland County. That proof of claim further states that no other security was given for the claim except for the first purchase money mortgage.

The debtor's modified Chapter 13 plan, filed on September 29, 1987 proposes payments of $650.00 for 59 months to the Chapter 13 Standing Trustee and a final payment on the sixtieth month of $14,-444.00. The debtor proposes by this plan to pay Lomas & Nettleton the "balance of foreclosure judgment" stated in the plan to be $40,000.00, plus interest of 7.5% per annum totalling $48,100.00.[5] The plan also provides for payment to Davis Furniture, the only other creditor herein, outside of the plan. The bankruptcy schedules filed by the debtor on May 22, 1987 stated that payments to Davis Furniture were current. No creditors appeared at the January 6, 1988 confirmation hearing.

*Cheryl Green* ("debtor") filed a voluntary Chapter 13 petition on June 1, 1987. On January 6, 1983 Cheryl Green, the debtor herein, and Richard D. Green executed a bond and first purchase money mortgage on the debtor's residence at 342 Highland Avenue, Penns Grove, New Jersey to Murray Financial Associates Inc. in the principal amount of $21,250.00. On January 6, 1983 the mortgage was assigned to Modern Mortgage Corporation and subsequently on December 1, 1983 the mortgage was assigned to Security Financial & Mortgage Corporation. On August 31, 1987 Security Financial & Mortgage Corporation filed as proof of claim in these proceedings on account of the aforesaid mortgage. The proof of claim states that on April 3, 1987 a foreclosure judgment, by default, was entered by the Superior Court of New Jersey. Final judgment was entered in the amount of $27,691.62. The proof of claim also states that no other security is held on the

---

**5.** *See* f.n. 2, *supra.*

claim except for the first purchase money mortgage.

The debtor's amended Chapter 13 plan filed on October 5, 1987 proposes monthly payments of $750.00 to the Chapter 13 Standing Trustee. By the plan the debtor proposes monthly payment of $602.00 to Security Financial & Mortgage Corporation over 60 months totalling $36,120.00 to pay off the foreclosure judgment. The plan also proposes to cure arrearages of $4,380.00 due to Manufacturer Hanover Consumer Services, Inc. the holder of a second mortgage on the subject property. The debtor listed no unsecured creditors in her bankruptcy schedules filed on June 1, 1987.

On December 17, 1987 Security Financial & Mortgage Corporation filed an objection to confirmation of the debtor's modified plan on two grounds: (1) that a final foreclosure judgment was entered on April 3, 1987 in the amount of $27,691.62, and; (2) the debtor's plan fails to pay off the final judgment amount plus interest at 7.5% in accordance with the Third Circuit's decision in *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987).

*Anna McCray* ("debtor") filed a voluntary Chapter 13 petition on June 10, 1987.

On March 24, 1981 Anna McCray, the debtor herein, and Mabel Starling executed a bond and first purchase money mortgage to Heritage Mortgage Finance Company in the principal amount of $14,750.00. The mortgage covered the debtor's residence at 3605 Westfield Avenue, Camden, New Jersey. On June 19, 1987 Arvida Mortgage Company ("Arvida Mortgage") filed a proof of claim in this matter on account of the aforesaid mortgage. That proof of claim states that a final judgment of foreclosure was entered by the Superior Court of New Jersey on April 1, 1987. That proof of claim further states that no other security is held for the claim except the aforesaid bond and mortgage.

On July 1, 1987 Arvida Mortgage filed a notice of motion to vacate the automatic stay of § 362 based upon an assertion that the filing of the petition by the debtor constituted an abuse of the bankruptcy process in violation of 11 U.S.C. § 109(g).[6] That motion was denied by the court at a hearing on August 5, 1987.

On September 11, 1987 the debtor filed a modified Chapter 13 plan which proposed to pay the Chapter 13 Standing Trustee $532.00 monthly for a period of sixty months. The debtor proposes to pay Arvida Mortgage's foreclosure judgment in full in the amount of $28,271.47 over the 60 month term of the plan. No other creditors were listed in the debtor's bankruptcy schedules filed on June 18, 1987.

On November 17, 1987 Arvida Mortgage filed an "Objection to Confirmation of Modified Plan" on the following grounds: (1) the modified plan does not cure the default in the total amount due and owing to the mortgagee of $31,926.42; (2) the present filing of the debtor is the fourth bankruptcy filing, no payments were made during the third bankruptcy proceeding to the Standing Trustee or to Arvida; (3) no payments were made, as of the date of the objection, since June 10, 1987 when the present petition was filed, in violation of 11 U.S.C. § 1325(a)(2);[7] (4) the present filing constitutes an abuse of the bankruptcy process in violation of 11 U.S.C. § 109(g); (5) the filing is contrary to the the holding of *Matter of Roach*, requiring that a debtor cure a judgment amount within sixty (60) days; (6) the modified plan does not meet

6. 11 U.S.C. § 109(g) provides:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic say provided by section 362 of this title.

7. 11 U.S.C. § 1325(a)(2) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid.

the feasibility requirement of 11 U.S.C. § 1325(a)(3).

*Asuncion Camacho* ("debtor") filed a voluntary Chapter 13 petition on July 1, 1987.

The debtor herein has filed a modified plan on September 17, 1987 proposing to pay to the Chapter 13 Standing Trustee the sum of $300.00 monthly for sixty (60) months. The debtor proposes through the plan to pay to the United States Department of Housing and Urban Development ("HUD") the sum of $14,548.00. This sum represents the "cram-down" value of a foreclosure judgment held by HUD, which value the debtor asserts is $12,100.00,[8] plus interest over the life of the plan at 7.5%.[9] The proposed cram-down is based upon the debtor's valuation of the subject real property of $22,000.00. The plan also proposes to pay unsecured creditors a 10% dividend. No creditors appeared at the confirmation hearing.

*Barbara E. Milton* ("debtor") filed a voluntary petition under Chapter 13 of Bankruptcy Code on July 6, 1987. Prior to the filing of the debtor's petition, New Jersey Housing & Mortgage Finance Agency ("NJHMFA") instituted foreclosure proceedings in the Superior Court of New Jersey, Chancery Division, Camden County, as the holder of a first purchase money mortgage on the debtor's residence at 2441 Denfield Street, Camden, New Jersey. Final judgment was entered in the foreclosure action on June 9, 1987. By that judgment the mortgaged premises were directed to be sold to satisfy the judgment amount in favor of NJHMFA in the sum of $18,878.12, together with interest and fixed costs, including a counsel fee of $338.78.

On July 6, 1987 the debtor filed a Chapter 13 plan proposing to pay the Standing Trustee $93.00 monthly for 60 months to pay "mortgage arrears" to United Jersey Bank in the amount of $4,500.00. On August 19, 1987 NJHMFA filed an objection to the debtor's proposed Chapter 13 plan on the grounds that due to the fact that judgment has been entered in the foreclosure action, the debtor's Chapter 13 proceeding must provide for the satisfaction of the entire amount due on the mortgage, plus taxed costs as set forth in the foreclosure judgment, in accordance with *Matter of Roach, supra,* or the debtor's bankruptcy proceeding must be dismissed.

On September 17, 1987 the debtor filed a modified Chapter 13 plan proposing to pay $200.00 monthly to the Standing Trustee for a period of 60 months. The debtor proposes to pay United Jersey Bank the cram-down value of the foreclosure judgment in the amount of $8,300.00,[10] plus interest at 7.5% per annum over the term of the plan for a total of $9,979.80.[11] The debtor asserts a value of the real estate at $18,000.00. The plan also provides for payment of $943.79 to the City of Camden for water and sewer charges.

NJHMFA appeared at the January 6, 1988 confirmation hearing in opposition to confirmation of the debtor's modified plan. NJHMFA argues that: (1) the secured creditor does not lose the protection of 11 U.S.C. § 1322(b)(2) because it has reduced its mortgage to a judgment in foreclosure, and; (2) state law mandates that the automatic stay be vacated and the secured creditor be allowed to proceed to sheriff's sale.

*James A. Stewart* ("debtor") filed a voluntary Chapter 13 petition with this court on July 7, 1987. On June 27, 1977 the debtor James A. Stewart, and Andrea Stewart, his wife, executed a mortgage on the debtor's residence at 105 English Oak Drive, Turnersville, New Jersey to Globe Mortgage Company in the principal amount of $46,700.00. On August 21, 1987 First Federal Savings & Loan Association of Rochester filed a proof of claim in these proceedings on account of the aforesaid mortgage. That proof of claim states that a judgment of foreclosure was entered on the property. A judgment of foreclosure was entered by the Superior Court of New

**8.** *See* f.n. 1, *supra.*

**9.** *See* f.n. 2, *supra.*

**10.** *See* f.n. 1, *supra.*

**11.** *See* f.n. 2, *supra.*

Jersey on May 18, 1987. The proof of claim further states that no other security was given for this claim except for the aforesaid mortgage on the property.

On July 7, 1987 the debtor filed a Chapter 13 plan proposing to pay the Chapter 13 Standing Trustee the sum of $241.00 monthly for 48 months to pay First Federal Savings & Loan of Rochester the amount of $9,246.00 through the plan, and a 10% dividend to unsecured creditors. On September 9, 1987, at the first scheduled confirmation hearing the debtor's case was dismissed for failure to make pre-confirmation payments to the Standing Trustee and for the failure to file a feasible and confirmable Chapter 13 plan. At that time the debtor had proposed to reinstate the mortgage with First Federal and cure arrearages in contravention of the Third Circuit decision in *Matter of Roach, supra.* An order dismissing the Chapter 13 case was entered on September 24, 1987. By order dated November 2, 1987 the debtor's Chapter 13 case was reinstated.

On October 7, 1987 the debtor filed a modified Chapter 13 plan proposing to pay the Standing Trustee $814.00 monthly for a period of 59 months, resulting in payment to First Federal in the amount of $28,000.00 and a ten (10%) percent dividend to unsecured creditors. On October 15, 1987 First Federal filed an objection to confirmation. First Federal asserts that the case of *Matter of Roach, supra,* mandates a finding by this court that, where, as in this case, the Chapter 13 petition was filed subsequent to the entry of foreclosure judgment, no substantial federal interests justify ignoring property interests created by the foreclosure judgment. The creditor also argues that pursuant to 11 U.S.C. § 108(b) a debtor is permitted to exercise his or her state law created right of redemption until the latter of the passage of sixty (60) days or the expiration of the state law redemption period. First Federal asserts that the filing of a Chapter 13 petition does not toll that redemption period. In its brief filed with this court on December 4, 1987, First Federal argues that: (1) the Bankruptcy Court's jurisdiction is limited to administering bankrupt estates exclusive of foreclosed real estate in which the debtor may claim some interest; (2) the bankruptcy court cannot confirm a plan proposing to satisfy the objecting creditor's foreclosure judgment over the life of the plan where the debtor has failed to demonstrate that Congress intended Chapter 13 to suspend the operation of state court foreclosure judgments; (3) the court cannot confirm a plan because it modifies the rights of the objecting creditor who is the holder of a claim secured only by a security interest in real property that is the debtor's principal residence pursuant to § 1322(b)(2); (4) the cram-down provisions of § 506 and § 1325(a)(5)(B) do not provide an independent statutory basis to confirm the plan, and; (5) the automatic stay does not affect the creditor's foreclosure proceedings.

*Larry Marshall and Linda Carolyn Marshall* ("debtors") filed a voluntary Chapter 13 petition on July 10, 1987. On October 29, 1985 the debtors executed a bond and first purchase money mortgage in the principal amount of $64,719.00 to Residential Financial Corporation. That mortgage was secured by the debtor's residence located at 123 Merle Lane, Swedesboro, New Jersey. The aforesaid mortgage was assigned to Valley National Bank on October 29, 1985. On or about November 14, 1985 the aforesaid mortgage was assigned to Citicorp Homeowners Services Inc. ("Citicorp"). In 1987 Citicorp instituted a mortgage foreclosure action in the Superior Court of New Jersey, Chancery Division, Gloucester County. A final judgment of foreclosure, by default, was entered against the debtors on July 9, 1987. By that judgment the mortgaged premises were ordered to be sold to satisfy the sum of $70,806.45, together with interest and taxed costs of $858.06 due to Citicorp. The judgment ordered that an execution for that purpose issue out of that court directed to the Sheriff of Gloucester County commanding such sale. Prior to any sale, on July 10, 1987, the debtors filed their present Chapter 13 petition. On September 24, 1987 Citicorp filed a proof of claim in this proceeding which states that no securi-

ty interest was held for its claim except for the aforesaid mortgage.

On July 10, 1987 the debtors filed a Chapter 13 plan which proposed payments of $561.00 monthly to the Standing Trustee for a term of 48 months to pay $7,065.00 to Citicorp, representing "arrears" on the mortgage, along with payment to General Motors Acceptance Corporation and Midlantic National Bank/South in the amounts of $4,700.00 and $12,000.00, respectively, representing the "cram-down" value of two automobiles. At the scheduled confirmation hearing on September 23, 1987 this court denied confirmation of the debtors' plan finding that the *Matter of Roach* decision prohibited the debtors from reinstating the mortgage of Citicorp and paying arrears after the entry of foreclosure judgment, but granted the debtors two weeks to file a modified plan, or the case would be dismissed.

On September 24, 1987 Citicorp filed an Objection to Confirmation on the grounds that it had obtained a foreclosure judgment on July 9, 1987 against the subject real property.

By order dated October 13, 1987 the debtors' case was dismissed for failure to file a modified plan. On October 14, 1987 the debtors filed a modified plan. The debtors subsequently moved before this court for reconsideration and reinstatement of their Chapter 13 case. On December 16, 1987 the court reinstated the Chapter 13 petition and directed notice to creditors of the debtors' modified plan. The modified plan filed on October 14, 1987 proposes payment of $1,200.00 monthly to the Standing Trustee for a period of 59 months, and a lump sum payment in the sixtieth month of $20,486.00. By their plan, the debtors propose to pay Citicorp $91,186.00, representing the amount of its foreclosure judgment, with interest over the life of the plan, payment to the State of New Jersey in the amount of $497.20 and payment to General Motor Acceptance Corporation and Midlantic National Bank/South, in the amounts of $4,700.00 and $12,000.00 respectively, representing the proposed cram-down value of two motor vehicles.

On December 23, 1987 Midlantic National Bank/South and GMAC filed two separate objections to the modified plan on the basis that the debtors failed to provide interest on their claims, and provided no payment to unsecured creditors.

On January 4, 1988 Citicorp filed a brief in opposition to the debtors' modified plan as it proposes to satisfy the creditor's foreclosure judgment over the life of the plan. The creditor asserts that: (1) the bankruptcy court's jurisdiction is limited to administering bankrupt estates exclusive of foreclosed real estate in which the debtor may claim some interest; (2) the bankruptcy court cannot confirm the debtor's plan proposing to satisfy the objecting creditor's foreclosure judgment over the life of the plan where the debtor has failed to demonstrate that Congress intended Chapter 13 plans to suspend the operation of state court foreclosure judgments; (3) the bankruptcy court cannot confirm the plan because the plan modifies the rights of an objecting creditor who is the holder of a claim secured only by a security interest in real property that is the debtor's principal residence; (4) the cram-down provisions of § 506 and § 1325(a)(5)(B) do not form an independent statutory basis for the bankruptcy court to confirm the plan; (5) the automatic stay of § 362 does not affect the objecting creditor's foreclosure proceeding.

On January 7, 1988 the debtors filed a second modified plan proposing to pay to the Standing Trustee $1,277.00 monthly for 59 months, and $20,486.00 on the sixtieth month. Over the entire term of the plan the debtors propose to pay Citicorp $91,-186.00 representing the amount of the foreclosure judgment with interest over the life of the plan, and to pay to General Motors Acceptance Corporation $6,934,00 and Midlantic National Bank/South $14,608.00, over the term of the plan, representing the "cram-down" value of two motor vehicles with interest. The plan proposed no payment to unsecured creditors. The unsecured claims scheduled by the debtors in their bankruptcy schedules filed on July 10, 1987 total $14,011.00.

At the January 6, 1988 confirmation hearing counsel for GMAC and Midlantic National Bank/South objected to the second modified plan on the basis that interest on the two creditors' claims will be paid as part of the debtors' balloon payment of $20,486.00 to be made in the sixtieth month of the debtors' plan. GMAC and Midlantic National Bank/South raised issues of feasibility of the plan and adequate protection of their interests under the plan.

*James Liles, Jr.* ("debtor") filed a voluntary Chapter 13 petition on July 10, 1987. On July 18, 1975 James Liles, Jr., the debtor herein, executed a bond and first purchase money mortgage to Jefferson Mortgage Co. in the principal amount of $24,000.00. The mortgage covered the debtor's residence located at Woodstown–Alloway Road, P.O. Box 45, Woodstown, New Jersey. On January 16, 1976 the mortgage was assigned to Penn Federal Savings and Loan Association of Philadelphia. On August 13, 1987 Atlantic Financial Federal filed a proof of claim in these proceedings on account of the aforesaid mortgage. The proof of claim states that a default judgment of foreclosure was entered on March 24, 1987 by the Superior Court of the State of New Jersey. The proof of claim further states that no other security is held for the creditor's claim except for the aforesaid mortgage. On September 18, 1987 the debtor filed a modified plan proposing to pay $100.00 monthly to the Chapter 13 Standing Trustee for six months and to sell the aforesaid real property within 180 days to satisfy the foreclosure judgment held by Atlantic Financial Federal. The debtor in his plan has assigned a value to the subject property of $50,000.00. The schedules filed by the debtor or August 6, 1987 listed no other creditors. On December 28, 1987 the debtor was granted leave to amend his schedules to add four unsecured creditors.[12] No creditors appeared at the confirmation hearing.

*Charles L. Martin, Jr. and Barbara Martin* ("debtors") filed a voluntary Chapter 13 petition on July 16, 1987. A final judgment of foreclosure was entered by default on August 19, 1982 in favor of Underwood Mortgage & Title Company, the holder of a first mortgage on the debtor's residence located at 311 Boyd Street, Camden, New Jersey. On September 14, 1987 Commonwealth Mortgage Corporation filed a proof of claim based upon the foresaid foreclosure judgment.

On July 16, 1987 the debtor filed a Chapter 13 plan proposing to pay $120.00 monthly to the Chapter 13 Standing Trustee for a period of 36 months, to pay Commonwealth $2,600.00, representing mortgage arrears, and pay 10% to unsecured creditors.

On September 14, 1987 Commonwealth filed an objection to confirmation and requested dismissal of the case or relief from the automatic stay. The grounds for the relief asserted by Commonwealth were: (1) judgment in foreclosure was entered on April 19, 1982, prior to the filing of the Chapter 13 petition herein. Accordingly, once a judgment is filed the bankruptcy filing does not affect property under foreclosure and cannot be included in the plan; (2) on the basis of the plan, it will take more than thirty-six (36) months to pay the amount of Commonwealth's claim; (3) pursuant to 11 U.S.C. § 1322(c) a plan cannot provide for payment over a period that is longer than three (3) years unless the court for "cause" approves a longer period, up to five years; (4) the plan does not correct the default on the first mortgage, including the holder's expenses within a reasonable period of time as is required by § 1322(b)(5); and (5) the amount set forth as due to the first mortgage holder is incorrect and should be amended to be $5,698.55.

On September 23, 1987 the debtors filed a modified plan providing for payments of $140.00 monthly to the Chapter 13 Standing Trustee for a period of 36 months. The plan provides for payment to Commonwealth Mortgage Corporation of $2,376.00, representing $2,000.00 on account of the cram-down value of the foreclosure judg-

---

**12.** These creditors are Avco Finance, listed at $705.00; Sears, Robuck & Co., listed at $554.00; the State of New Jersey, listed at $450.00; and Atlantic Electric Co., listed at $1,500.00.

ment,[13] including interest at 7.5% per annum over 24 months.[14] Under the plan, the debtors have valued the subject real property at $20,000.00. Unsecured creditors were to be paid $1,560.00. The The unsecured creditors listed in the debtors' bankruptcy schedules filed on July 16, 1987 total $8,791.00.

On October 29, 1987 Commonwealth filed Objections to Confirmation of Modified Plan and request for Dismissal or relief from the stay on the grounds that: (1) once a foreclosure judgment is filed, a subsequent bankruptcy filing cannot affect the property under foreclosure or be included in the plan; (2) the mortgage must be paid within the 60–day period provided by 11 U.S.C. § 108; (3) § 1322(c) provides that a plan may not provide for payments for a period over three years, unless the court, for cause, approves a period no longer than five years; (4) the plan as modified does not provide for the correction of a default within a reasonable time and required by § 1322(b)(5); (5) the amount due the first mortgage holder is $26,787.36; (6) confirmation should be denied based upon a lack of good faith and lack of feasibility.

On November 4, 1987 Commonwealth filed a motion for relief form the automatic stay, asserting that the aforesaid foreclosure judgment was filed prior to the filing of the instant petition, and that the property cannot be included in the plan since the only relief accorded a debtor is under § 108 which mandates payoff of the mortgage within 60 days. Commonwealth asserts that (1) the bankruptcy courts are courts of limited jurisdiction and cannot pre-empt state law rights of redemption; (2) the creditor as a holder of a claim secured only by a security interest in the debtor's principal residence cannot have its rights modified by a plan that proposes to satisfy the objecting creditor's foreclosure judgment over the life of the plan pursuant to § 1322(b)(2); (3) § 1322(b) and § 1325(a) do not permit cram-down of an objecting mortgagee's foreclosure judgment.

*James W. Potts and Lucille Potts* ("debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 23, 1987. On June 29, 1979 the debtors executed a bond and mortgage to Jefferson Mortgage Co. in the principal amount of $33,850.00 covering the debtors' residence located at 116 Spruce Avenue, Bellmawr, New Jersey. On September 11, 1987 Fleet Real Estate Funding Corp. filed a proof of claim on account of the aforesaid mortgage and stated therein that Fleet held no security for its claim other than a first mortgage on the subject premises. On June 18, 1987 a final judgment of foreclosure was entered against the property by the Superior Court of New Jersey in the amount of $44,623.22.

On September 30, 1987 the debtors filed a modified Chapter 13 plan which provided for payments of $570.00 monthly to the Chapter 13 Standing Trustee for a period of 59 months, and a payment to Fleet Real Estate of $20,035.00 in the sixtieth month. The plan provides for payment to Fleet Real Estate of $49,145.00, representing "payment in full for mortgage loan/judgment." Under the plan the sum of $507.35 is to be paid to the United States Department of Housing & Urban Development. Campbell's Employees Federal Credit Union is to be paid outside the plan and the plan provides for 100% payment to unsecured creditors.

On December 17, 1987 Fleet Real Estate Funding Corp. objected to confirmation of the modified plan on the following grounds: (1) on June 18, 1987 final judgment was entered by the Superior Court of New Jersey in the matter in the amount of $44,-623.22, and; (2) debtor's plan fails to pay off the full judgment amount plus interest at 7.5% in accordance with *Matter of Roach.*

*David Field* ("debtor") filed a voluntary Chapter 13 petition with this court on July 30, 1987. On May 7, 1973 David W. Field, the debtor herein, and Kathleen M. Field, his wife, executed a note and mortgage to Jefferson Mortgage Co. in the principal

**13.** *See* f.n. 1, *supra.*

**14.** *See* f.n. 2, *supra.*

amount of $21,000.00 on the debtor's residence located at 979 Fern Road, Williamstown, New Jersey. On August 10, 1973 the mortgage was assigned to MGIC Mortgage Corporation. On May 9, 1983 the mortgage was assigned to First Wisconsin Trust Company. On September 6, 1983 the mortgage was reassigned to MGIC Mortgage. On September 13, 1983 the mortgage was assigned to Union Planter's National Bank of Memphis. On January 21, 1987 the mortgage was assigned to MGIC Mortgage Corporation. On September 3, 1987 Arvida Mortgage Company filed a proof of claim based upon the aforesaid mortgage. That proof of claim states that a foreclosure judgment was entered by the Superior Court of New Jersey on June 4, 1987. That proof of claim further states that no security is held for Arvida's claim except for the aforesaid mortgage and note.

On October 14, 1987 the debtor filed a modified plan which proposes to pay the Chapter 13 Standing Trustee the sum of $550.00 monthly for 59 months. The debtor proposes to pay $19,515.00 to Arvida, $1,713.00 to Household Finance, and ten percent to unsecured creditors. Household Finance is scheduled by the debtor in schedules filed on July 30, 1987 as an unsecured creditor on a loan. On November 24, 1987 Cobb Parnters Financial Inc., formerly known as Arvida Mortgage Co. filed an "Objection to Confirmation of Modified Plan." Cobb set forth the following objections: (1) final judgment was entered in the amount of $16,734.54; (2) the modified plan provides for the sum of $19,515.34 over five years at 7.5% interest; accordingly, there will be due $20,081.46 over the term of the plan; (3) the sum of $1,524.65 has been advanced by the mortgagee for taxes and insurance; (4) the plan is not proposed in good faith in violation of 11 U.S.C. § 1325(a)(3).

*John Greco* ("debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 30, 1987. On April 10, 1984 the debtor executed a Note and Second Mortgage to Manufacturer's Hanover Financial Services of New Jersey, Inc. ("Manufacturer's Hanover") covering the debtor's residence located at 184 Williamstown–Glassboro Road, Williamstown, New Jersey. A foreclosure judgment was entered on May 11, 1987 in the Superior Court of New Jersey against the debtor in favor Manufacturer's Hanover in the amount of $21,916.64, plus interest and costs from April 29, 1987.

On July 30, 1987 the debtor filed a Chapter 13 plan which proposed to pay $164.00 monthly for 36 months to the Chapter 13 Standing Trustee to cure estimated arrears of $5,340.00 to Manufacturer's Hanover on the second mortgage and pay 10% to unsecured creditors.

On October 5, 1987 Manufacturer's Hanover filed an objection to confirmation on the grounds that: (1) the claim of Manufacturer's Hanover is secured by a mortgage which has merged into the final judgment of foreclosure; (2) the debtor is indebted to Manufacturer's Hanover in the amount of $21,916.64 plus interest and costs from April 29, 1987; (3) pursuant to *Matter of Roach* once a foreclosure judgment has been entered and the mortgage merged into the judgment, a plan to cure arrears is not permissible, and; (4) had a foreclosure judgment not entered, the arrearages as of the date of the filing of the Chapter 13 petition would be $6,416.20, not $5,340.00 as set forth in the plan.

On October 14, 1987 the debtor filed a modified Chapter 13 plan proposing to pay to the Chapter 13 Standing Trustee $484.00 monthly for a period of 50 months. The debtor proposes to pay Manufacturer's Hanover the sum of $21,916.00 and a 10% dividend to unsecured creditors.

On December 17, 1987 Manufacturer's Hanover filed an objection to the modified plan. Manufacturer's Hanover stated in its objection: (1) as of November 1, 1987, the first date payments were due under the modified Chapter 13 plan, the debtor was indebted to Manufacturer's Hanover for taxed costs of $700.77, interest of $859.78 (at 7.5%), and the judgment amount of $21,916.64, for a total debt of $23,477.19; (2) to allow Manufacturer's Hanover to receive its judgment plus interest at 7.5% over the

50 month term of the plan, Manufacturer's Hanover must receive $611.02 monthly, or $30,550.80, over 50 months, and; (3) the plan fails to provide for interest or costs.

*Charlene Martin* ("debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on August 3, 1987.

On September 18, 1987 the debtor filed a modified Chapter 13 plan which proposes to pay $600.00 monthly to the Chapter 13 Standing Trustee for 59 months, and a lump sum payment of $21,200.00 in the sixtieth month. The debtor, through her plan, proposes to pay Fleet Real Estate Funding Corporation the cram-down value of a foreclosure judgment it holds in the amount of $41,600.00,[15] plus interest at the rate of 7.5%[16] per annum over the life of the plan, for a total payment of $50,000.00. The debtor asserts in her plan that the subject premises has a value of $55,000.00. The plan provides no dividend to unsecured creditors. On February 5, 1988, after the close of the January 6, 1988 hearing, Fleet Real Estate Funding filed an "Objection to Confirmation of Modified Plan" stating the following objections: (1) the debtor is impermissibly attempting to cram-down a first purchase money mortgage; (2) pursuant to § 1322(b)(2) the plan may not modify the rights of a secured creditor whose claim is secured by a security interest in real property that is the debtor's principal residence pursuant to § 1322(b)(2), and; (3) the mortgagee requested that the court recognize its claim in the amount of $48,811.07.

*William C. Ross* ("debtor") filed a voluntary Chapter 13 petition on August 25, 1987. On October 7, 1987 the debtor filed a modified plan which provided to pay $500.00 monthly to the Standing Trustee for a period of 53 months. The debtor proposed to pay U.S. Mortgage Corporation $19,000.00,[17] representing the "cram-down" value of a foreclosure judgment it holds against the debtor's residence located at 402 N. 41st Street, Camden, New Jersey, plus interest of 7.5% per annum[18] over the

term of the plan for a total payment of $22,844.00. The debtor has valued the subject property at $30,000.00. The plan provides for payment of $300.00 to the City of Camden, New Jersy for water and sewer charges and a 10% dividend to unsecured creditors. No creditors appeared at the January 6, 1988 confirmation hearing.

*Clarence Michael Stokes and Jannas Ann Stokes* ("debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on August 27, 1987. The debtors' petition was dismissed on November 4, 1987 based upon the debtors' failure to attend the scheduled confirmation hearing on November 4, 1987. An order dismissing the petition was signed on January 4, 1988.

On December 3, 1987 the debtors filed a notice of motion to reinstate the Chapter 13 petition and for confirmation of a modified Chapter 13 plan. On that same day the debtors filed a modified Chapter 13 plan which provides for payment of $950.00 monthly to the Chapter 13 Standing Trustee for a period of 60 months. The plan proposes to pay Oxford Finance Co. the sum of $53,005.00, representing the principal balance due on a final judgment of foreclosure held by Oxford against the debtors' residence located at Beach Avenue, Mays Landing, New Jersey, and interest at 7.5% per annum over the life of the Chapter 13 plan. The plan also provides for payments to Broadway Bank, the holder of a second mortgage on the debtors' residence, and no payment to unsecured creditors listed in the debtor's original schedules filed on August 27, 1987 at $6,237.00. No creditors appeared at the January 6, 1988 hearing on the debtors' motion to reinstate the petition and confirm the modified plan.

*Betty D'Allesandro* ("debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 10, 1987. Commonwealth Mortgage Corporation is the holder of a first purchase money mortgage on the debtor's residence at 124 Glen-

**15.** *See* f.n. 1, *supra.*

**16.** *See* f.n. 2, *supra.*

**17.** *See* f.n. 1, *supra.*

**18.** *See* f.n. 2, *supra.*

wood Avenue, Merchantville, New Jersey. The mortgage is dated November 4, 1982, with the original mortgagee being Broker's Mortgage Service. Commonwealth is the holder of the mortgage by an Assignment dated November 11, 1982, recorded on January 3, 1983 in the Camden County Clerk's Office. The debtor fell into default on the mortgage and a foreclosure proceeding was instituted in the Superior Court of New Jersey, Chancery Division, Camden County. Final judgment was entered in the foreclosure action, by default, on July 27, 1987. Pursuant to that judgment the mortgaged premises were directed to be sold to satisfy the judgment amount in favor of Commonwealth of $74,406.02, together with interest, and fixed costs, including a counsel fee of $894.06, and the sum of $4,018.42 due to Carteret Bank & Trust Company. A sheriff's sale of the property was scheduled for September 25, 1987. On September 10, 1987 the instant Chapter 13 petition was filed.

On September 10, 1987 the debtor filed a Chapter 13 plan proposing to pay the Chapter 13 Standing Trustee $700.00 monthly for 59 months and a lump sum payment to the Standing Trustee of $50,250.00 on the sixtieth month. The plan proposes to pay Commonwealth $73,100.00, representing the cram-down value of the foreclosure judgment,[19] plus interest of 7.5% per annum[20] over the term of the plan, for a total payment of $87,888.00. The debtor asserts that the subject property has a value of $90,000.00. The plan provides no payment to unsecured creditors scheduled in the amount of $5,600.00 according to the debtor's schedules filed on September 10, 1987.

On November 23, 1987 General Home Financial Services Inc. and Carteret Bank & Trust Company filed a Notice of Objection to Confirmation on the basis that neither alleged secured creditors are scheduled to be paid by the proposed plan. The debtor has scheduled General Home Services and Carteret Bank & Trust Company as unsecured creditors.

On December 10, 1987, Commonwealth filed a Notice of Objection to the Confirmation of the debtor's plan. The basis of the objection is as follows: (1) the debtor has not made regular monthly mortgage payments to Commonwealth, and; (2) foreclosure judgment has been entered and accordingly "the mortgagor's Chapter 13 bankruptcy proceeding must provide for the satisfaction of the entire amount due on the mortgage, plus taxed costs," as set forth in *Matter of Roach*, "or the bankruptcy proceeding should be dismissed."

On January 4, 1988 Commonwealth filed a "Secured Creditor's Statement of Facts and Law in Opposition to Debtor's Proposed Chapter 13 Plan." Therein Commonwealth argues that: (1) the secured creditor does not lose the protection of 11 U.S.C. § 1322(b)(2) because it has reduced its mortgage to a judgment in foreclosure; (2) state law mandates that the automatic stay be vacated and the secured creditor allowed to proceed to sheriff's sale, and; (3) the debtor's plan should be dismissed because it fails to meet the feasibility requirements of 11 U.S.C. § 1325(a)(6).

*Russell Polk* ("debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 11, 1987. On May 6, 1987 a final judgment of foreclosure, by default, was entered by the Superior Court of New Jersey, Chancery Division, Camden County, against the debtor and in favor of Federal National Mortgage Association ("FNMA"). FNMA is the holder of a first purchase money mortgage on the debtor's residence located at 906 N. 23rd Street, Camden, New Jersey. By that judgment, the mortgaged premises were ordered to be sold to satisfy the sum of $13,012.73, together with interest and fixed costs, including a counsel fee of $280.13. The judgment ordered that an execution for that purpose issue out of that court directed to the Sheriff of Camden County commanding such sale.

A sheriff's sale was scheduled for July 10, 1987, and adjourned to August 7, 1987, and then September 11, 1987. On Septem-

---

**19.** *See* f.n. 1, *supra.*

**20.** *See* f.n. 2, *supra.*

**364**

ber 11, 1987, prior to the sheriff's sale, the debtor filed the instant Chapter 13 petition. On October 7, 1987 the debtor filed a Chapter 13 plan proposing to pay the Chapter 13 Standing Trustee $290.00 monthly for a period of 60 months. The plan proposed to pay J.I. Kislak Mortgage Service Corporation, servicing agent for FNMA, $12,000.00, representing the balance of its foreclosure judgment, plus interest at 7.5% per annum [21] over the term of the plan for a total payment of $14,432.00. The plan provides that general unsecured creditors, scheduled in the debtor's bankruptcy schedules filed October 7, 1987 at $1,500.00, would receive no dividend. On December 4, 1987 J.I. Kislak, as servicing agent for FNMA, filed a Notice of Objection to Confirmation of Chapter 13 plan. In its objection J.I. Kislak asserts that the Chapter 13 petition erroneously provides for the revival, deacceleration and cure of the foreclosed mortgage, contrary to New Jersey law and the Third Circuit's holding in *Matter of Roach.*

*Charles R. Lee and Gloria L. Lee* ("debtors") filed a voluntary Chapter 13 petition on October 10, 1987. Trico Mortgage Company Inc. holds an outstanding judgment in foreclosure in the amount of $46,767.60 plus sheriff's fees against the debtors' residence located at 1202 W. Boulevard, Cape May Courthouse, New Jersey.

The debtors on October 10, 1987 filed a Chapter 13 plan which proposes to pay $500.00 monthly to the Chapter 13 Standing Trustee for a period of 60 months. The plan proposes payment to Trico Mortgage of $24,286.00 [22] representing the cramdown value of its foreclosure judgment plus interest at 7.5% per annum over the life of the plan. The debtors in their plan asserted that the subject property had a value of $40,000.00. The Chapter 13 plan provides for payment of 10% to unsecured creditors.

On October 14, 1987 Trico filed an objection to confirmation of the debtors' plan asserting that the market value of the subject property was $55,000.00 and the debtors could not cram-down the secured creditor's mortgage to an amount less than the property's value.

On November 19, 1987 the debtors filed a modified Chapter 13 plan which proposes to pay the Chapter 13 Standing Trustee $550.00 for 59 months, and $32,000.00 in the sixtieth month, representing payment of $46,728.00, the balance of the foreclosure judgment, plus interest of 7.5% per annum for a total payment of $56,180.00.[23] The plan also provided for payment of $1,100.00 to Middle Township, New Jersey on account of real estate taxes. The plan provides for no payment to unsecured creditors, which total $13,553.00 according to the bankruptcy schedules filed by the debtors on October 1, 1987.

On December 4, 1987 Trico filed an objection to confirmation of the debtors' modified plan on the following grounds: (1) the plan reduces the monthly payment to Trico from the amount provided in the promissory note to $500.00 monthly; (2) the plan reduces the interest rate payable to Trico from 16.5% per annum in the loan documents to 7.5% per annum; [24] (3) the debtors should not be allowed to pay the mortgage over the term of a plan by utilization of a balloon payment in the 59th month, and; (4) Trico objects to the plan unless the full amount of the outstanding foreclosure judgment plus fees and continuing interest is paid in substantially equal payments over the term of the plan.

*Edgardo Cosme* ("debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on October 2, 1987. On November 30, 1983 Edgardo Cosme, the debtor herein, and Luz Rosado executed a bond and mortgage to Clarion Mortgage Company in the principal amount of $29,100.00 covering the debtor's residence located at 1862 42nd Street, Pennsauken, New Jersey. On December 20, 1983 the mortgage was assigned to Inland Mortgage Corporation which assignment of mortgage was duly

---

**21.** *See* f.n. 2, *supra.*

**22.** *See* f.n. 1, *supra.*

**23.** *See* f.n. 2, *supra.*

**24.** *See* f.n. 2, *supra.*

filed with the Registrar of Deeds and Mortgages for Camden County, New Jersey. On July 27, 1987 a final judgment of foreclosure, by default, was entered by the Superior Court of New Jersey, Chancery Division, Camden County. Pursuant to that judgment the mortgaged premises were ordered to be sold to satisfy sums due to Inland Mortgage in the amount of $33,090.75, plus interest, and fixed costs, including a counsel fee of $480.90.

On October 2, 1987 the debtor filed a Chapter 13 plan proposing to pay $478.37 monthly to the Chapter 13 Standing Trustee, beginning November 1, 1987 for a period of 36 months. The plan provided for payment to Inland Mortgage of $6,796.08 to pay "mortgage arrears" and costs with interest, to pay General Home Financial Services, Inc. $5,808.24, representing the cram-down value of a satellite television, and payment of 100% to unsecured creditors.

On November 5, 1987 Inland Mortgage Corporation filed an Objection to Confirmation on the grounds that Inland Mortgage had obtained a foreclosure judgment on July 27, 1987 against the subject premises. Inland Mortgage argues that: (1) the bankruptcy court cannot confirm the debtor's plan proposing to satisfy the objecting creditor's foreclosure judgment over the life of the plan where the debtor has failed to demonstrate that Congress intended Chapter 13 plans to suspend the operation of state court foreclosure judgments; (2) the plan modifies the rights of the objecting creditor who is the holder of a claim secured only by a security interest in real property that is the debtor's principal residence pursuant to 11 U.S.C. § 1322(b)(2); (3) the cram-down provisions of § 1325(a)(5)(B) and § 506 do not form an independent basis for confirming a plan proposing to satisfy the objecting creditor's foreclosure judgment, and; (4) the automatic stay does not affect the objecting creditor's foreclosure proceeding.

*Hector Rodriquez* ("debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on October 2, 1987. On that same date the debtor filed a Chapter 13 plan which proposed to pay to the Chapter 13 Standing Trustee $460.00 monthly for a period of 60 months. The plan proposes to pay National State Bank the balance of the amount due pursuant to a foreclosure judgment, plus interest at the rate of 7.5% per annum for a total of $16,835.00 over the 60 month period.[25] The plan also provides for payment to Princeton Bank of $7,435.00 over 36 months representing the cram-down value of an automobile. Under the plan, unsecured creditors, listed in the debtor's bankruptcy schedules filed on October 2, 1987 in the amount of $3,260.00, will receive no dividend. No creditors appeared at the January 6, 1988 confirmation hearing.

*Arlene Payne* ("debtor") filed a voluntary Chapter 13 petition under Chapter 13 of the Bankruptcy Code on October 20, 1987. A final judgment of foreclosure was entered, by default, on June 26, 1987 in favor of Jersey Mortgage Company, the holder of a first mortgage on the debtor's residence known as 299 Morse Street, Camden, New Jersey. Pursuant to that judgment an execution was directed to be issued to the Sheriff of Camden County to sell the mortgaged property to satisfy the judgment amount of $27,930.08, plus interest and taxed costs, including a counsel fee of $429.30. Commonwealth Mortgage Corporation has asserted rights in this court under the aforesaid judgment of foreclosure.

On October 20, 1987 the debtor filed a Chapter 13 plan which proposes to pay $225.00 monthly to the Chapter 13 Standing Trustee for a period of 60 months. The plan provides to pay Commonwealth $9,600.00, representing the "cram-down" value of the foreclosure judgment, in the amount of $8,000.00 [26] plus interest at 7.5% per annum over the life of the plan,[27] to pay the City of Camden $100.00 on account of water and sewer charges and real estate

**25.** *See* f.n. 2, *supra.*

**26.** *See* f.n. 1, *supra.*

**27.** *See* f.n. 2, *supra.*

taxes, and to pay no dividend to unsecured creditors. The unsecured creditors listed in the debtor's schedules filed on October 20, 1987 includes a cram-down balance of $22,000.00 due to Commonwealth. The debtor has placed a value on her residence under the plan of $8,000.00.

On October 28, 1987 Commonwealth filed a notice of motion for relief from the automatic stay of § 362 asserting that the aforesaid foreclosure judgment was filed prior to the filing of the instant petition and that the subject property cannot be included in a plan since the only relief the debtor is entitled to is under § 108, which mandates the pay-off of the mortgage within 60 days. On November 23, 1987 the debtor filed an objection to Commonwealth's motion for relief from the automatic stay. The debtor asserts that her Chapter 13 plan which proposes to cram-down the creditor's foreclosure judgment should be confirmed by this court.

On December 2, 1987 Commonwealth filed a brief in opposition to the debtor's plan. Commonwealth asserts in its brief that: (1) the bankruptcy courts are courts of limited jurisdiction and cannot pre-empt state law rights of redemption; (2) the objecting creditor as a holder of a claim secured only by a security interest in the debtor's principal residence cannot have its rights modified by a plan that proposes to satisfy the objecting creditor's foreclosure judgment over the life of the plan; (3) the reconciliation of § 1322(b) and § 1325(a) does not permit cram-down of an objecting mortgagee's foreclosure judgment.

Commonwealth on January 13, 1988 filed an objection to confirmation and request for dismissal or relief from the automatic stay. Commonwealth asserts therein that: (1) once a judgment of foreclosure is filed in a state court action, a subsequent bankruptcy filing will not affect property under foreclosure and cannot be included in the plan; (2) the plan effects a reinstatement of the mortgage over the life of the plan.

The mortgage must be paid within the 60 day redemption period granted under § 108(b); (3) § 1322(c) provides that the plan cannot provide for payment for a period over three years, unless the court for "cause" approves a longer period, up to five years; (4) the plan does not correct the default on the mortgage, including the holder's expenses, within a reasonable time in violation of § 1322(b)(5); (5) the amount due the mortgage holder is $42,608.04; (6) confirmation of the plan should be denied due to a lack of good faith and a lack of feasibility.

On January 6, 1988 the court considered only Commonwealth's motion for relief from the automatic stay. The confirmation hearing in this case was scheduled for January 20, 1988. The confirmability of the plan however, is an issue before this court in connection with Commonwealth's motion for relief from the automatic stay.

At the heart of the controversy surrounding the matters before the court is the effect of the Third Circuit's decision of *Matter of Roach*, 824 F.2d 1370 (3d Cir. 1987) on Chapter 13 plans proposed in this and other bankruptcy courts in the State of New Jersey.[28] After the *Roach* case was decided, debtors, through counsel, have filed Chapter 13 plans espousing a variety of payment plans designed to comply with the *Roach* decision. Before this court specifically addresses the Chapter 13 plans proposed, it would be both appropriate and helpful to discuss the theory of statutory cure in bankruptcy and the Third Circuit's decision in *Matter of Roach*.

"Statutory cure is a concept unknown in the ordinary law of contracts. Absent an express contractual provision permitting a breaching party to cure a default or breach, no such right exists, and a court will strictly enforce the contract according to its terms. [The Bankruptcy Code, however,] alters and to some extent impairs contractual rights, permitting a breaching or defaulting party to cure a default or

---

28. The Third Circuit's decision dealt specifically with New Jersey mortgage law and its effect on the right to cure under 11 U.S.C. § 1322(b). Thus, given the fact that mortgage law varies from state to state, the decision's applicability to bankruptcy courts in other states is unknown at this time.

breach in certain circumstances." Epling, *Contractual Cure in Bankruptcy*, 61 Amer.Bankr.L.J. 71 (1987).

Section 1322(b) provides, in pertinent part, that:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> (3) provide for the curing or waiving of any default;
>
> .    .    .    .    .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>
> .    .    .    .    .
>
> (10) include any other appropriate provision not inconsistent with this title.

In a Chapter 13 case, there are essentially two cure provisions. Section 1322(b)(3) is a broad cure provision which allows the debtor to cure any default. Section 1322(b)(5) provides, "notwithstanding subsection (b)(2)," for the curing of any default "on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Section 1322(b)(2), although not a specific cure provision, provides that the debtor's plan may not "modify" the rights of a secured claim holder when the claim is secured solely by a security interest in the debtor's principal residence. Thus, if a secured creditor has a security interest in property other than the debtor's principal residence, the debtor may modify such secured creditor's rights under the Chapter 13 plan.

In the home mortgage situation, the permissive provisions of § 1322(b) have been a source of complication. The problem stems from the ambiguity in subsections (b)(2), (3) and (5).

One structural problem is the absence of a definition of what constitutes a 'modification' within the meaning of subsection (b)(2). Additionally, it is not clear from the wording of the statute whether subsection (b)(2) supercedes the debtor's power to cure established in subsection (b)(5) or whether it is subordinate to that provision. Theoretically, the subsection (b)(5) cure is applicable to defaults on the home-loan mortgages as long as payments under the mortgage were originally scheduled to continue past the three to five-year period of the bankruptcy plan. However, this seems to contradict directly subsection (b)(2) which proscribes the modification of home-loan creditor's rights.

Note, *Chapter 13*, 2 Bankr.Dev.J. 147, 151 (1985).

The resolution of the interplay of these provisions of § 1322(b) was the threshold issue in the Third Circuit case of *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987). Thereafter, the Third Circuit analyzed the foreclosure process under New Jersey law and its affect on the cure provisions of Chapter 13 of the Bankruptcy Code.

The Roaches owned a residence in New Jersey that was subject to a mortgage held by GMAC Mortgage Corporation. The Roaches fell behind on mortgage payments and GMAC therefore declared them in default and accelerated the mortgage debt pursuant to the terms of the mortgage. GMAC initiated foreclosure proceedings and obtained a foreclosure judgment. On March 17, 1986 the Roaches' property was sold at a sheriff's sale for $60,000.00 to Arthur and Geri Lutzker.

The purchasers of the property paid the Sheriff a deposit of $13,600.00 on the day of the sale. Pursuant to New Jersey Rule of Court 4:65–5, the Sheriff must:

> ... deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to

the sale is served upon him within 10 days after the sale or at any time thereafter before the delivery of the conveyance.

On March 24, 1986, before the expiration of the ten-day period following the sale and prior to the delivery of the deed to the purchasers, the Roaches filed a Chapter 13 petition. The Roaches' Chapter 13 plan proposed to cure the mortgage default by paying the arrearages over the life of the plan, reinstate the mortgage and maintain current mortgage payments outside the plan. On May 28, 1986, over 60 days after the debtors' filed their Chapter 13 petition, the purchasers of the property moved for relief from the automatic stay imposed by 11 U.S.C. § 362(a) to permit them to pay the remainder of the foreclosure sale purchase price to the Sheriff and in return receive a conveyance of the property from the Sheriff. The bankruptcy court granted the purchasers' motion and denied confirmation of the Roaches' plan. The District Court affirmed the Bankruptcy Court and an appeal was taken to the Third Circuit.

The Third Circuit's initial inquiry was whether the right to cure a home mortgage default under § 1322(b) survives contractual acceleration of the full mortgage debt. The Third Circuit stated that Congress' placing of the authorization to "modify the rights of holders" of various claims in § 1322(b)(2), separate from the authorization to cure defaults found in § 1322(b)(3) and the authorization to cure defaults and maintain payments on long-term debt obligations found in § 1322(b)(5), suggests that Congress drew a distinction between modifications and cures. *Matter of Roach, supra,* 824 F.2d at 1375. Section 1322(b)(2) proscribes any attempt by the debtor to modify pre-existing rights of holders of claims secured only by real property which is the debtor's principal residence. However, Congress did not intend the prohibition of modification of home mortgages

under subsection (b)(2) as limiting the power to cure under subsection (b)(3) or subsection (b)(5). *Matter of Roach, supra,* 824 F.2d at 1376. The court in *Roach* stated:

> Although a post-acceleration cure does alter a home mortgagee's rights under an accleration clause, and "modifies" its rights in that sense, a post-acceleration cure differs from other kinds of modification to a home mortgagee's rights in that it does no more than return the debtor to full compliance with the mortgage and restore the original mortgagee-mortgagor relationship. There is good reason to believe that Congress was contemplating more substantial alterations of rights when it excepted home mortgagee's rights from Section 1322(b)(2)'s general authorization to "modify the rights of holders of secured claims." [29]

*Matter of Roach, supra,* 824 F.2d at 1375.

If Section 1322(b)(5) is construed not to authorize the reversal of an acceleration of home mortgage debt, it will rarely provide to debtor's the relief contemplated by Congress. Thus, the Third Circuit held that Chapter 13 debtors have the right to post-acceleration cure of home mortgage defaults under § 1322(b)(5). *Matter of Roach,* 824 F.2d at 1377. *Accord, Grubbs v. Houston First American Savings Association,* 718 F.2d 694 (5th Cir.1983), *reversed,* 730 F.2d 236, 242 (5th Cir.1984) (en banc); *In re Taddeo,* 685 F.2d 24, 26 (2d Cir.1982).

After determining that the right to cure a default on a home mortgage survives acceleration, the Third Circuit then addressed the issue of when this right terminates. Based upon the established rule that the determination of property rights and the assets of a bankruptcy's estate is left to state law, absent a contraveiling federal interest, the Third Circuit applied the text of § 1322(b) in the context of New

---

**29.** The contrary argument to the Third Circuit's decision is that a post-acceleration cure would modify the mortgage holder's rights by extinguishing his state law entitlement to immediate payment in full. Thus, § 1322(b)(2) limits the cure of default provision of § 1322(b)(3). Additionally, § 1322(b)(5) would be rendered ineffective after acceleration because the entire obligation is then immediately due and, accordingly, it cannot be said that the last payment on that obligation is due after the expiration of the plan. This theory, however, was not persuasive on the Third Circuit.

Jersey law. *See Butner v. United States,* 440 U.S. 48, 54, 57, 99 S.Ct. 914, 917, 919, 59 L.Ed.2d 136 (1979). The Third Circuit in the *Roach* case reached the conclusion that the right to cure a default on a home mortgage expires when the mortgagee obtains a foreclosure judgment:

> Having determined that the right to cure a default on a home mortgage survives acceleration, we must confront the issue of when it terminates. When we apply the text of § 1322(b) in the context of New Jersey law, we are led to the conclusion that the right to such a cure expires when the mortgagee obtains a foreclosure judgment. Moreover, we conclude that beyond that point in the foreclosure process there are no substantial federal interests that would justify ignoring property interests created by the judgment of a New Jersey court.

824 F.2d at 1377.

In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. *Matter of Roach, supra,* 824 F.2d at 1377. In *Roach,* the Third Circuit stated::

> ... we read § 1322(b)(5) to authorize the curing of a default in, and restoration of, a contractual relationship. When a debtor files a Chapter 13 petition in New Jersey and proposes a plan attempting to utilize the authority of Section 1322(b)(5) after the entry of a foreclosure judgment, no contractual relationship remains and the mortgagee's rights are those that arise from its judgment. *Accord, In re Brown,* 73 B.R. 306 (Bkrtcy.D.N.J. 1987).

*Matter of Roach, supra* 824 F.2d at 1377. As a result of the merger doctrine, there is no longer a mortgage to be cured and restored and the authority conferred by Section 1322(b)(5) is simply inapplicable. *Id.*

Thus, there can be no attempt to cure once a judgment in foreclosure is entered because "the effect of a final judgment in foreclosure is to cause the mortgage to merge into the judgment thereby extinguishing the old terms of installment payment for a present right to have the obligation satisfied in full." *Matter of Martinez,* 73 B.R. 300, 302 (Bankr.D.N.J.1987), *citing, Hudson Trust Company v. Boyd,* 80 N.J.Eq. 267, 84 A. 715 (Ch. 1912). *Heritage v. Bethel,* 96 N.J.Eq. 515, 125 A. 917 (Ch. 1924), *aff'd* 97 N.J.Eq. 366, 127 A. 924 (E & A 1925); *Colonial Building–Loan Association v. Mongiello Bros., Inc.,* 120 N.J.Eq. 270, 184 A. 635 (Ch. 1936). Once the mortgage is extinguished by merger, the mortgagor may only redeem his property by tendering payment in full with interest. *Matter of Martinez, supra,* 73 B.R. at 303; *See also, In re Brown,* 73 B.R. 306 (Bankr.N.J.1987).

The Third Circuit in *Roach* analyzed New Jersey law as follows:

> Under New Jersey law, "[t]he final judgment in an action to foreclose a real estate mortgage fixes the amount due under the mortgage and directs the sale of the real estate to raise funds to satisfy the amount due." *Eisen v. Kostakos,* 116 N.J.Super. 358, 282 A.2d 421, 424 (App.Div.1971); *accord, e.g., Central Penn National Bank v. Stonebridge Ltd.,* 185 N.J.Super. 289, 448 A.2d 498, 504 (Ch.Div.1982). The judgment thus declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction. Accordingly, even if a mortgage survives the entry of a judgment in New Jersey, the mortgagee possesses independent rights by virtue of its judgment. This is significant because nothing in the cure provisions of Section 1322(b)(5) suggests that Congress intended rights created by a final judgment to be extinguished by a Section 1322(b)(5) cure.

*Matter of Roach, supra,* 824 F.2d at 1378.

Thus, the Third Circuit in *Roach* held that §§ 1322(b)(3) and (b)(5) can only be utilized by a Chapter 13 debtor to cure a default on his home mortgage, notwithstanding acceleration by the mortgagee, if the mortgagee has not yet obtained a judgment in foreclosure. Once the judgment has been entered, § 1322(b) precludes the debtor from attempting to cure the default by way of his Chapter 13 plan, because,

under New Jersey law, foreclosure merges the mortgage and the debt and the mortgagor no longer retains any rights in that mortgage there being no longer a mortgage to be cured and restored. *See Matter of Roach, supra* 824 F.2d at 1377. *Cf., Matter of Clark,* 738 F.2d 869, 874 (7th Cir.1984) (debtors entitled to "cure" a default on residential mortgage loan under § 1322(b)(5) after entry of a state court judgment of foreclosure, where under relevant Wisconsin law a judgment of foreclosure "does nothing but judicially confirm the acceleration").

The practical effect of the Third Circuit's holding in *Matter of Roach* is that if a Chapter 13 is filed after the default on residential home mortgage payments and the acceleration of the mortgage amount, but before a judgment of foreclosure is obtained, the Chapter 13 debtor can reverse the acceleration and cure the mortgage arrearages through the debtor's Chapter 13 plan while at the same time making normal monthly mortgage payments outside the plan. However, if a Chapter 13 is filed after the entry of a foreclosure judgment, the Chapter 13 debtor cannot reverse the acceleration, reinstate the mortgage and cure the default through the Chapter 13 plan under §§ 1322(b)(3) and (b)(5). The Third Circuit, however, did not indicate in its decision what a Chapter 13 debtor may permissibly do in a plan if the petition is filed after the entry of a foreclosure judgment. In essence, the Third Circuit left unanswered the question of the extent to which 11 U.S.C. § 1322(b)(2) prohibits a debtor, against whom a foreclosure judgment has been rendered prepetition, from dealing with the claim held by the foreclosure judgment holder through a Chapter 13 plan. The result has been the filing of various Chapter 13 plans proposed by the debtors herein.

■ The Chapter 13 plans proposed by the debtors herein may be separated into six categories:

(1) the debtor would cure the "arrearages" owed the holder of the foreclosure judgment through the life of the plan and maintain regular monthly payments outside of the plan.[30]

(2) the debtor would pay the amount of the foreclosure judgment with various terms regarding interest, in equal monthly installments through the life of the plan.[31]

(3) the debtor would pay the amount of the foreclosure judgment with various terms regarding interest, in equal monthly installments through the life of the plan, however a balloon payment would be made in the last monthly installment.[32]

(4) the debtor would pay the cramdown value of the foreclosure judgment plus interest in equal monthly installments over the life of the plan.[33]

(5) the debtor would pay the cramdown value of the foreclosure judgment, plus interest over the life of the plan, however, a balloon payment would be made on the last monthly installment.[34]

(6) the debtor would sell the property foreclosed upon to satisfy the amount of

**30.** The following case proposes this type of plan: *In re Edgardo Cosme,* Case No. 87–06038.

**31.** The following cases propose this type of plan: *In re John D. Whitcraft,* Case No. 87–02901; *In re Hector Rodriquez,* Case No. 87–06051; *In re Cheryl Green,* Case No. 87–03308; *In re Annie McCray,* Case No. 87–03565; *In re James A. Stewart,* Case No. 87–04145; *In re David Field,* Case No. 87–04631; *In re John Greco,* Case No. 87–04633; *In re Clarence Stokes and Jannas Ann Stokes,* Case No. 87–05240; *In Russell Polk,* Case No. 87–05554.

**32.** The following cases propose this type of plan: *In re Joseph T. Holmes,* Case No. 87–03154; *In re James W. Potts and Lucille Potts,* Case No. 87–

04487; *In re Larry Marshall and Linda Carolyn Marshall;* Case No. 87–04212.

**33.** The following cases propose this type of plan: *In re Asuncion Camacho,* Case No. 87–04010; *In re Charles and Barbara Martin,* Case No. 87–04339; *In re William C. Ross,* Case No. 87–05196; *In re Arlene Payne,* Case No. 87–06427; *In re Barbara E. Milton,* Case No. 87–04111.

**34.** The following cases propose this type of plan: *In re Charlene Martin,* Case No. 87–04713; *In re Betty D'Alessandro,* Case No. 87–05516; *In re Barry McKeon and Deborah McKeon,* Case No. 87–02901; *In re Charles Lee and Gloria Lee,* Case No. 87–05989.

the judgment.[35]

Those plans which propose to cure "arrearages" through the life of the plan, and maintain regular payments outside the plan constitute an impermissible attempt to utilize the cure provisions of § 1322(b) in direct contradiction of the Third Circuit's ruling in *Roach.* This court's approval of the various other plans proposed requires an analysis of both state law and federal bankruptcy law.

Initially, certain creditors have asserted herein that the bankruptcy courts' subject matter jurisdiction is limited to administering bankrupt estates, exclusive of foreclosed real property in which the debtor may claim some interest.

Effective July 10, 1984 Congress enacted into law the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98-353 (1984). Congress enacted 28 U.S.C. § 1334 in response to *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) which established that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to ordinary appellate review." *Thomas v. Union Carbide Agr. Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 3334-35, 87 L.Ed.2d 409 (1985). 28 U.S.C. § 1471 was declared unconstitutional.

Section 1334 of Title 28 contains jurisdictional provisions in relevant part as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

. . . . .

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

28 U.S.C. § 157 further provides in pertinent part:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation of estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

---

**35.** Only one case proposes this type of plan: *In re James Liles, Jr.,* Case No. 87-04223.

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

By standing order of the United States District Court for the District of New Jersey dated July 23, 1984, the United States District Court for the District of New Jersey has referred to the bankruptcy judges for this district:

Any or all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 of the United States Code, or arising in or relating to a case under Title 11 of the United States Code....

In New Jersey a debtor's interest in real estate subsequent to a foreclosure sale includes a right of redemption. Prior to September 15, 1948, the subject of confirmation of judicial sales was controlled by statute, R.S. 2:65–12. The statute was then amended to commit the subject to the Rules of the State Courts of New Jersey. *See Hardyston National Bank v. Tartamella,* 56 N.J. 508, 511, f.n. 1, 267 A.2d 495 (1970).

In the case of *Hardyston National Bank v. Tartamella,* 56 N.J. 508, 267 A.2d 495 (1970), the Supreme Court of New Jersey established that a mortgagor has an unqualified right to redeem property sold at a sheriff's sale for 10 days following the sale. In so determining, the court stated that, "[t]he ultimate question is one of policy. We think the answer should favor the mortgagor. The right to redeem was devised by equity to protect him from the forfeiture of his title. It is a favored right." *Id.* at 513, 267 A.2d 495. *Accord, Lobsenz v. Micucci Holdings, Inc.,* 127 N.J.Super. 50, 52, 316 A.2d 59 (App.Div. 1974); *Heritage Bank v. Magnefax Corp.,* 194 N.J.Super. 376, 378, 476 A.2d 1271 (Ch. Div.1984). The *Hardyston* court based its decision on the fact that New Jersey Court Rule 4:65–5 provides that objections to the sale of property at a sheriff's sale may be filed for 10 days after the conveyance. In order to redeem the property, a mortgagor must pay the mortgage debt plus foreclosure and sale costs. *Heritage Bank v. Magnefax Corp.,* 194 N.J.Super. at 378, 476 A.2d 1271.

The court in *Hardyston* stated:

[W]e believe the just course is to permit the mortgagor to redeem within the ten-day period fixed by R:4:65–5 for objections to the sale or until an order confirming the sale if objections are filed under the rule.

56 N.J. at 513, 267 A.2d 495. Rule 4:65–5 provides that the sheriff shall deliver the deed "in pursuance of the sale, unless a motion for the hearing of an objection to the sale is served upon him within 10 days after the sale or at any time thereafter before the delivery of the conveyance." The court in *Hardyston* interpreted the impact of this rule to shift the burden of going forward to the objector and so obviating the entry of a formal order confirming the sale unless an objection was made to the sale. *See* 56 N.J. at 511, 267 A.2d 495.

█ Once a sheriff's certificate is issued to the successful bidder following the sale, no further proceedings are required to vest absolute title to the property in the holder of the sheriff's certificate, assuming the debtor takes no affirmative steps to redeem the property. *See Union County Savings Bank v. Johnson,* 210 N.J.Super 589, 596, 510 A.2d 288 (Ch.Div.1986).

■ The purpose of a foreclosure action is to determine the right to foreclose and the amount due on the mortgage, and to give the purchaser at the foreclosure sale the title and estate acquired by the mortgagee, as well as the estate of the mortgagor at the time the mortgage was executed, free from subsequent encumbrances. *See Central Penn National Bank v. Stonebridge, Ltd.*, 185 N.J.Super. 289, 302, 448 A.2d 498 (Ch.Div.1982). The mortgagor is not foreclosed of the equity of redemption until the premises are actually sold. *See Heritage v. Bethel*, 96 N.J.Eq. 515, 519, 125 A. 917 (Ch.1924).

■ Accordingly, subsequent to the entry of a final judgment of foreclosure, and for at least ten (10) days subsequent to a foreclosure sale, a debtor has an interest in the subject real property which is cognizable under § 541 of the Bankruptcy Code.[36] This right of redemption is the only property right which a mortgagor retains after a judgment of foreclosure since the mortgagor does not retain any rights in the mortgage itself. *See Matter of Martinez*, 73 B.R. 300, 302 (Bankr.D.N.J.1987); *Matter of Brown*, 73 B.R. 306, 308 (Bankr.D.N.J. 1987).

Section 362 of the Bankruptcy Code stays commencement or continuation of proceedings or acts against the debtor or the property of the debtor estate as that property is defined under 11 U.S.C. § 541. Section 362 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under ... this title, ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debt-

or that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

This court can find no exception in § 362 of the Bankruptcy Code for the enforcement of a state court mortgage foreclosure judgment. The legislative history of § 362 supports this conclusion:

The automatic stay is one of the fundamental debtor protections provided by the Bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be released of the financial pressures that drove him into bankruptcy.

House Report No. 95–595, 95th Cong., 1st Sess. 340–341 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

As set forth above, § 1322(b)(2) states:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

---

**36.** 11 U.S.C. § 541 provides in pertinent part:

(a) The commencement of a case section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(b) Subject to subsections (a) and (c) of this section, a plan may—

.    .    .    .    .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

The arguments espoused by debtors' attorneys in support of confirmation of the various plans before the court focus on the ability of a debtor to pay either the foreclosure judgment amount or the asserted value of the foreclosure judgment in full over the life of the Chapter 13 plan, notwithstanding § 1322(b)(2)'s proscription of any modification of the rights of holders of claims secured only by a security interest in the debtor's principal residence.

One argument presented by debtors' attorneys and the Chapter 13 Standing Trustee to comply with both *Roach*'s proscription against curing defaults under §§ 1322(b)(3) and (5) after a judgment of foreclosure has been entered, and the proscription contained in § 1322(b)(2) against modifying home mortgagee's claims, deals with the definition of "security interest" under the Bankruptcy Code. A "security interest" is defined under § 101(45) as "[a] lien created by an agreement." Subsection 1322(b)(2)'s ban on modification only applies when a claim is "secured only by a security interest in real property that is in the debtor's principal residence."

Debtors' attorneys argue that when the mortgagee obtained a judgment of foreclosure, the security interest was converted to a judicial lien, which is nonconsensual. Thus, the mortgagee no longer has a claim "secured only by a *security interest,*" and the mortgagee's rights may be modified under § 1322(b)(2)'s own terms.

The debtors rely in part on the cases of *Matter of Jordan,* 5 B.R. 59 (Bankr.D.N.J. 1980) and *Matter of Garner,* 13 B.R. 799 (Bankr.S.D.N.Y.1981) as support for this proposition. In *Matter of Jordan* the debtor in a Chapter 13 proceeding filed a complaint against a judgment creditor for a declaration of the parties' rights. The creditor had obtained a judgment against the debtor in aribtration which was docketed in the Superior Court of New Jersey. A writ of execution was issued by the state court and a levy of the the real estate of the debtor made prior to the filing of the debtor's Chapter 13. The bankruptcy court held, *inter alia,* that a judicial lien, such as held by the creditor in that case was not a security interest as defined by the Bankruptcy Code, since it was not a "lien created by a security interest." Accordingly, the court held that the claim did not fall within the limitations of § 1322(b)(5) that prohibits modification of a claim secured only by a security interest in the debtor's principal residence. 5 B.R. at 63. In *Garner,* the Chapter 13 debtors defaulted on their mortgage and the mortgagee obtained a judgment of foreclosure prior to the date the debtor's filed their Chapter 13 petition. The debtor's sought to cramdown the value of the foreclosure judgment on the mortgagee through the plan under §§ 506(a) [37] and 1325(a)(5) [38]. The

---

37. 11 U.S.C. § 506(a) states:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or

use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

38. 11 U.S.C. § 1325(a)(5) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

court held that when the creditor obtained its rights under the foreclosure judgment it could no longer assert that its rights in the real estate were "secured only by a security interest" under an existing consensual mortgage and therefore was not subject to the proscription against modification contained in § 1322(b)(2).[39] 13 B.R. at 801.

This court cannot agree with the analysis espoused in *Garner* in light of the arguments espoused by those courts which have explicitly rejected such a reading of § 1322(b)(2). *See e.g., In re Seidel*, 752 F.2d 1382 (9th Cir.1985); *In re Collins*, 19 B.R. 209, 211 (Bankr.S.D.Fla.1982); *In re Ivory*, 32 B.R. 788, 793 (Bankr.D.Or.1983); *First Financial Savings & Loan Association v. Winkler* ("*Winkler*"), 29 B.R. 771, 775 (N.D.Ill.1983).

In the case of *First Financial Savings and Loan Association v. Winkler*, 29 B.R. 771 (N.D.Ill.1983), the district court affirmed an order of the bankruptcy court granting the mortgagee relief from the automatic stay of § 362 to continue foreclosure proceedings pending in the state court where the debtor filed his Chapter 13 petition after entry of judgment of foreclosure and sale, but four days prior to the expiration of the relevant redemption period under Illinois law. The court held that under § 108(b) of the Bankruptcy Code the debtor had no more than sixty days after the filing of the Chapter 13 petition to exercise his redemption right, and that that period having lapsed, the mortgagee was entitled to relief from the automatic stay. 29 B.R. at 775.

Under New Jersey law, just as under Illinois law applicable in the *Winkler* case, a mortgage "merges" into the judgment of foreclosure and the only security for the mortgagee's claim remains the real property and his right to commit the proceeds of the sale of the debtor's real property to satisfy the judgment. *Matter of Roach, supra*, 824 F.2d at 1377–78. *See also, First Financial Savings and Loan Association v. Winkler*, 29 B.R. at 776. The foreclosure judgment in New Jersey declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction. *Matter of Roach, supra*, 824 F.2d at 1378. The combination of the right to receive payment and the right to look to the real estate for satisfaction if payment is not made continues to fit the classic notion of a "security interest" in the real estate. *First Financial Savings and Loan Association v. Winkler, supra*, 29 B.R. at 776.

In *Winkler* the debtor argued that § 1322(b)(2) was made inapplicable to the mortgagee's claim where the creditor proceeded to judgment in foreclosing the debtor's mortgage because the claim was not secured only by a security interest as defined by the Bankruptcy Code, but also by

---

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

**39.** The Honorable Howard Schwartzberg writing for the *Garner* court stated:

Dale Funding's [the creditor's] claim is not based only upon a security interest in the debtors' principal residence. The claim was reduced to judgment and constitutes a judicial nonconsensual lien against the debtors' home. Code § 101(27) [presently § 101(32)] defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Manifestly, the holder of a judicial lien against a real estate does not occupy the same status as "a claim secured only by a security interest in real property" as expressed under under Code

§ 1322(b)(2). Prior to the foreclosure judgment Dale Funding held a security interest, which is defined under Code § 101(37) [presently § 101(45)] to mean a "lien created by an agreement." Reference must also be made to Code § 110(36) [presently § 101(44)] which defines a "security agreement" to mean an "agreement that creates or provides for a security interest." When Dale Funding obtained its rights under the foreclosure judgment it could no longer assert that its rights in the real estate were "secured only by a security interest" under an existing consensual mortgage and therefore not subject to modification under Code § 1322(b)(2). *In re Jordan*, 5 B.R. 59, 2 C.B.C.2d 635 (B.C.N.J.1980). Hence, Code § 1322(b)(2) permits the debtors to "modify the rights of holders of secured claims", not otherwise only secured by a security interest in the debtors' principal residence.

13 B.R. at 801.

a judgment or judicial lien. 29 B.R. at 771. The *Winkler* court rejected this argument as implausible reasoning that if the debtors' argument was adopted, the mortgagee would wind up with less when it obtained more. *First Financial Savings and Loan Association v. Winkler, supra,* 29 B.R. at 775.

In New Jersey a levying judgment creditor will gain priority over a senior non-levying judgment creditor, but not over senior mortgagees. *See Pulawski Savings & Loan Association v. Aguiar,* 174 N.J.Super. 42, 415 A.2d 365 (Ch.1980) (interpreting N.J.S.A. § 2A:17–39). Fundamental to this scheme of priorities is that a diligent creditor is rewarded at the expense of a dilatory creditor.

An illustration put forth by counsel for one of the mortgagees before the court is illuminating. For example, "A" is a mortgagee with a first purchase money mortgage secured solely by the debtor's principal residence, and "B" is a mortgagee with a second mortgage secured solely by the debtor's principal residence. The debtor subsequently defaults on both obligations and "A" chooses to foreclose its lien, while "B" chooses to do nothing. "A" obtains a foreclosure judgment in its favor and the debtor, prior to a sheriff's sale, files a Chapter 13 petition. In the bankruptcy proceeding it is determined that the fair market value of the debtor's residence is $10,000.00 less than the amount owed to "A" under the judgment.

If the position advocated by the debtors and Trustee is followed, the diligent creditor "A" would be punished because its foreclosure judgment has lost the protection of § 1322(b)(2). The dilatory creditor "B" would in all likelihood be rewarded since "A" would be subject to the cram-down provisions of § 1325(a)(5). Under the cram-down, "A"'s judgment amount would be reduced to the value of the property, thereby enhancing "B"'s priority by the amount "A"'s secured claim is reduced. Such an absurd result is not contemplated by state law, the Bankruptcy Code or Congressional intent.

■ With regard to the plans proposing to pay the value of the foreclosed property by utilizing the cram-down provisions of § 506 and § 1325(a)(5), this court finds that the arguments and authority supporting such a plan are not persuasive.

In reconciling § 1322 and § 506, it must be noted that 11 U.S.C. § 506 is a provision of general applicability in cases under Chapters 7, 11 and 13 of the Bankruptcy Code. *See,* 11 U.S.C. § 103(a). On the other hand, 11 U.S.C. § 1322 applies only in cases under Chapter 13. *See,* 11 U.S.C. § 103(h). This court accepts the tenet of statutory construction which provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment. *See, Maiatico v. United States,* 302 F.2d 880, 886 (D.C.Cir.1962); *In re Brown,* 329 F.Supp. 422, 425 (S.D. Iowa 1971). Accordingly, while courts have recognized the general applicability of 11 U.S.C. § 506 in bankruptcy cases, its applicability has been limited where more specific statutory provisions apply, or where such application is inconsistent with the policy of the Bankruptcy Code.

In the case of *In re Mahaner,* 34 B.R. 308 (Bankr.W.D.N.Y.1983), Marine Midland Bank, N.A., a secured creditor in a Chapter 7 proceeding sought relief from the automatic stay under 11 U.S.C. § 362 in order to proceed against certain property of the debtors. The debtors, in response to the Bank's motion, sought a valuation of the real property in question under 11 U.S.C. § 506 in order to pay off the secured interest held by Marine National Bank in the subject property and to redeem the property to the extent of Marine National Bank's lien. The *In re Mahaner* court held that 11 U.S.C. § 506 could not be utilized by the debtors to avoid the Bank's mortgage lien in a Chapter 7 case. The court reasoned that if 11 U.S.C. § 506 could be employed in a Chapter 7 proceeding, 11 U.S.C. § 722, which deals with the redemption of personal property in a Chapter 7 case, would be rendered mere surplusage. 34 B.R. at 309. The *In re Mahaner* court further noted that 11 U.S.C. § 722 is more specific on the

issue of redemption than is 11 U.S.C. § 506. The court concluded that such specific statutory provisions prevail over ambiguous or inconsistent general statutory provisions. 34 B.R. at 309. Finally, the *In re Mahaner* court determined that it is not good policy to permit a Chapter 7 debtor to avoid a mortgage lien while a Chapter 11 or Chapter 13 debtor would be unable to avoid a mortgage lien under the same circumstances. To permit such a result would be to discourage the utilization of the rehabilitative sections, Chapter 11 and Chapter 13, which contemplate at least some repayment to unsecured creditors. In a Chapter 13 bankruptcy proceeding, 11 U.S.C. § 1322(b)(2) prohibits a debtor from modifying a mortgage on its principal residence where the claimant holds no other security. Furthermore, other liens would be kept intact pursuant to 11 U.S.C. § 1325(a)(5)(B). Likewise, under 11 U.S.C. § 1111(b)(2), a secured creditor may make an election which results, under 11 U.S.C. § 1129(a)(7)(B) and (b)(2)(A), in the lien remaining in effect in the full amount. 34 B.R. at 309. The *In re Mahaner* court concluded that the specific provisions of 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 1129(a)(7)(B) and (b)(2)(A) supersede the general provisions of 11 U.S.C. § 506 which are inconsistent. 34 B.R. at 309.

In the case of *In re Simpkins*, 16 B.R. 956 (Bkrtcy.E.D.Tenn.1982), the court dealt with the interplay between 11 U.S.C. § 506 and 11 U.S.C. § 1322(b). In that case, the debtors, in their Chapter 13 plan, proposed to pay all of their creditors in full, with the exception of the payment of attorney's fees which were added to unsecured claims. A bank, to which the debtors were indebted under three promissory notes, objected to the confirmation of the debtors' Chapter 13 plan. Two of the promissory notes executed by the debtors to the bank, a second mortgage note and a 90-day note, were secured only by a second mortgage on real estate which was the debtor's principal residence.

The bank in the *In re Simpkins* case, asserted numerous objections to the confirmation of the debtors' plan. One of the bank's objections was that the last pay-ment on the second mortgage note may have been due before the last payment under the plan. The bank asserted that, under 11 U.S.C. § 1322(b)(2), its rights could not be modified, except as allowed by 11 U.S.C. § 1322(b)(5), which allows the curing of defaults and the maintenance of regular payments only if the last payment is due after the last payment under the plan. 16 B.R. at 961.

Judge Ralph H. Kelley, writing for the *In re Simpkins* court, established that while acceleration may affect the right to cure a default, 11 U.S.C. § 1322(b)(5) should not be employed to deny a debtor's right to cure a default. 16 B.R. at 961. Relying upon an extensive analysis of relevant legislative history, Judge Kelley held that the Bankruptcy Code allows a debtor to cure defaults on a note for which the final payment was due before the final payment under the Chapter 13 plan. 16 B.R. at 961–963. Additionally, the *In re Simpkins* court determined that curing defaults and maintaining regular payments on a claim which is secured only by the residence of the debtor does not modify a claimant's rights in violation of 11 U.S.C. § 1322(b)(2). 16 B.R. at 963. *See also, In re McSorley*, 24 B.R. 795, 798 (Bankr.D.N.J.1982).

In *In re McSorley*, 24 B.R. 795 (Bankr.D.N.J.1982), Judge William Lipkin, formerly of this Court, considered whether the rights of an assignee of a second mortgage had been modified under 11 U.S.C. § 1322(b)(2). Judge Lipkin held that the second mortgagee was not entitled to relief from the automatic stay in order to enforce its mortgage lien, since the final payment under the note held by the second mortgagee was due before the debtors commenced their bankruptcy case. Judge Lipkin found that the second mortgagee's rights were not modified under 11 U.S.C. § 1322(b)(2) since under the debtors' confirmed Chapter 13 plan, the creditor in *In re McSorley* was going to receive 100 percent of the money due to it plus accruing interest up to the time of payment. The court in *In re McSorley* relied upon the case of *In re*

*Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn. 1982), in stating:

> the protection of section 1322(b)(2) was intended to prevent the application of the 'cramdown' provision of the Bankruptcy Code to the holder of a claim secured solely by residential real estate. [citation omitted] It was not intended to be applied to situations like the present plan so as to work an injustice on the debtors' attempt to keep their home. The Second Circuit has recently agreed with this interpretation and stated: '... we believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modifications of claims.' *In re Taddeo,* 685 F.2d 24, 9 B.C.D. 556, 559 (2d Cir.1982). In that case the court held that debtors could cure defaults and de-accelerate their secured long-term residential debt which had been accelerated under the terms of their agreement, prior to the filing of the Chapter 13 Petition.

24 B.R. at 798.

Similarly, the Second Circuit Court of Appeals in the matter of *In re Taddeo,* 685 F.2d 24 (2d Cir.1982), permitted debtors in a Chapter 13 case to cure defaults under a purchase money mortgage and to continue making monthly mortgage payments, despite the mortgagee's prepetition acceleration of the mortgage. The *In re Taddeo* court reasoned that the power to cure mortgage arrears granted to debtors under 11 U.S.C. § 1322(b) includes the power to "de-accelerate" the mortgage and reinstate its original payment schedule. 685 F.2d at 26. The *In re Taddeo* court further determined that the power to cure any default granted by Sections 11 U.S.C. § 1322(b)(3) and (b)(5) is not restricted by 11 U.S.C. § 1322(b)(2), which forbids the modification of security interests in a debtor's principal residence. The *In re Taddeo* court reasoned that curing defaults under 11 U.S.C. § 1322(b)(3) and curing defaults and maintaining payments under 11 U.S.C.

§ 1322(b)(5) are not modifications of claims. 685 F.2d at 27.

The *In re Simpkins* court, while recognizing the right to cure, also recognized that 11 U.S.C. § 1322(b)(2) prevents the application of the cram-down provision of 11 U.S.C. § 1325(a)(5)(B) to holders of claims secured only by residential real estate. 16 B.R. at 963. *See also, In re Taddeo,* 685 F.2d 24, 27–28 (2d Cir.1982); *First Financial Savings & Loan Association v. Winkler,* 29 B.R. 771, 775–76 (N.D. Ill.1983); *In re Ivory,* 32 B.R. 788, 793 (Bankr.D.Or.1983); *In re McSorley,* 24 B.R. 795, 798 (Bankr.D.N.J.1982); *United Companies Financial Corporation v. Brantley,* 6 B.R. 178, 189 (Bankr.N.D.Fla. 1980); *Matter of Sulzer,* 2 B.R. 630, 636 (Bankr.S.D.N.Y.1980).

The Third Circuit in its recent decision in *Matter of Capps,* 836 F.2d 773 (3d Cir.1987) affirmed a decision of the bankruptcy court and district court holding that where a Chapter 13 debtor seeks to cure a home mortgage default, the secured creditor is not entitled to interest on mortgage arrears, where such payments were not provided for in the mortgage contract. In so ruling, the court found that "home mortgagees were not the intended beneficiaries of § 1325(a)(5)(B)(ii) ... because their treatment insofar as cures of defaults are concerned, is dictated by the specific provisions of § 1322(b)." *Capps, supra,* at 777.

The *In re Simpkins* court recognized that while 11 U.S.C. § 506 determines the extent to which a claim is a secured or an unsecured claim, it does not necessarily affect the right to receive payment on a claim. The court in *In re Simpkins* specifically stated, "though § 1322(b)(2) deals with the 'rights of the holder of a claim,' the emphasis should be on 'claim.' A claim is a right to payment." 16 B.R. at 963 (citing 11 U.S.C. § 101(4)(A)). The *In re Simpkins* court recognized that 11 U.S.C. § 1322(b)(2) preserves the right of a holder of a claim, secured only by a security interest in the debtor's principal residence, to receive regular monthly mortgage payments as provided for in the contract which was the basis of the claim. 16 B.R. at 965.

The *In re Simpkins* court also established that 11 U.S.C. § 1322(b)(2) preserves a creditor's right to collect other charges provided for in the contract. The court stated:

> Obviously, § 506(b) does not affect the right to receive the regular payments. The court believes it does not affect the right to recover the other charges, costs, interest after maturity on defaulted payments, and attorney's fees provided for by the contract. If the main purpose of § 1322(b)(2) is to preserve payment rights, then it should also preserve these. Section 506 does not determine the right to payment, but only whether the claim is secured or unsecured. Chapter 13 may require full payment of some unsecured claims. Priority claims are another example.

16 B.R. at 965.

This court agrees with the analysis of 11 U.S.C. § 1322(b)(2) contained in the *In re Simpkins* opinion. To apply the cramdown provisions of 11 U.S.C. § 506 or § 1325(a)(5) to creditors whose claims are secured solely by the debtor's principal residence, would in large part vitiate the protections of 11 U.S.C. § 1322(b)(2). It would also be at odds with the clear intent of Congress to protect a lender's security when a lender is secured only by a security interest in a Chapter 13 debtor's home.

The Congressional history of 11 U.S.C. § 1322(b)(2) provides:

> Section 1322(b)(2) of the House Amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated with under section 1322(b)(5) of the House amendment.

16 B.R. at 963 (quoting 124 Cong.Rec. S17,-424 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H11, 106–11,107 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards)).

■ The debtors' contention that the payment of the full judgment amount with interest or the value of the judgment through the life of the plan is permissible under § 1322(b)(2) assumes that the rights of a holder of a state court foreclosure judgment is in no way modified or contravened by Chapter 13 plans providing for such repayment. This assumption flies in the face of the *Roach* decision and established case law.

In *Roach*, the Third Circuit emphasized that federal supremacy be invoked only where there is clear Congressional intent. The Third Circuit's analysis follows:

> Pursuant to Article I, § 8 of the United States Constitution, Congress has the power to establish uniform bankruptcy laws throughout the United States. "Where Congress has chosen to exercise its authority, contrary provisons of state law must accordingly give way." *Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Nonetheless, "the usual rule is that congressional intent to pre-empt will not be inferred lightly. Pre-emption must either be explicit, or compelled due to an unavoidable conflict between the state law and the federal law." *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 272 (3d Cir.1984); *accord In re Quanta Resources Corp.*, 739 F.2d 912, 915 (3d Cir.1984). *See also Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918) ("state laws are ... suspended only to the extent of actual conflict with the system provided by the Bankruptcy [Code] of Congress"). We begin with "the basic assumption that Congress did not intend to displace state law." *Penn Terra*, 733 F.2d at 272–73 (citing *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).

> "Proper respect, therefore, for the independent sovereignty of the several States requires that federal supremacy be invoked only where it is clear that Congress so intended. Statutes should

therefore be construed to avoid pre-emption, absent an unmistakable indication to the contrary." *Id.* at 273. Although "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause," *Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971), absent a conflict "between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights. *Johnson,* 719 F.2d at 273.

The Supreme Court has emphasized that "Congress has generally left the determination of property rights in the assets of a bankruptcy's estate to state law." *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). The Court went on to instruct that:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 [1961]. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests....

*Id.* at 55, 99 S.Ct. at 918. Thus, absent a countervailing federal interest, "the basic federal rule is that state law governs." *Id.* at 57, 99 S.Ct. at 919.

*Matter of Roach, supra,* 824 F.2d at 1373–74.

Accordingly, absent a countervailing federal interest, "the basic federal rule is that the state law governs." *Butner, supra,* 440 U.S. at 57, 99 S.Ct. at 919. *Matter of Roach,* 824 F.2d 1370, 1374 (3d Cir.1987).

In *Matter of Brown,* 73 B.R. 306 (Bankr. D.N.J.1987) Chief Judge Vincent J. Commisa, writing for the bankruptcy court thoroughly examined the New Jersey law of mortgage foreclosure:

> The purpose of a foreclosure action is to determine the right to foreclose and the amount due on the mortgage, to give the purchaser at a foreclosure sale the title and estate acquired by the mortgagee, as well as the estate of the mortgagor at the time the mortgage was executed free from subsequent encumbrances. *Central Penn Nat. Bank v. Stonebridge Ltd.,* 185 N.J.Super. 289, 448 A.2d 498 (Ch.1982).

> Under New Jersey law every mortgagor is possessed of an "Equity of Redemption" which stems from the mortgage itself and the common law. Pursuant to the right aforesaid, the mortgagor is cloaked with the authority, subsequent to default, but prior to a judgment of foreclosure, to perform his obligation under the mortgage and have title to his property restored free and clear of the mortgage obligation. G. Nelson and D. Whitman, *Real Estate Finance Law* § 7.1 (2d ed. 1985).

·    ·    ·    ·    ·

> At judgment, a mortgagee gains a right to the judgment sum plus interest in exchange for his old right to receive periodic payments on the underlying debt. Although there are some early decisions to the contrary,[40] New Jersey case law has long held that the effect of a final judgment in foreclosure is to cause the mortgagee to merge into the judgment thereby extinguishing the old terms of installment payments for a present right to have the obligation satisfied in full. *Hudson Trust Co. v. Boyd,* 80 N.J.Eq. 267, 84 A. 715 (Ch.1912); *Her-*

---

**40.** Some cases have held that the foreclosure decree does not have the effect of merging the indebtedness on the mortgage bond. *See e.g. Deshler v. Holmes,* 44 N.J.Eq. 581, 18 A. 75 (E. & A.1888); *Atwood v. Carmer,* 75 N.J.Eq. 319, 73 A. 114 (Ch. 1909). *See In re Brown, supra,* 73 B.R. at 308, n. 2.

*itage v. Bethel,* 96 N.J.Eq. 515, 125 A. 917 (Ch.1924), *aff'd.* 97 N.J.Eq. 366 [127 A. 924] (E. & A.1925); *Colonial Bldg.–Loan Ass'n v. Mongiello Bros., Inc.,* 120 N.J.Eq. 270, 184 A. 635 (Ch.1936). Consequently, once the mortgage has been foreclosed merger automatically occurs. However, once must not lose sight of the fact that the mortgagor still retains a right to redeem the foreclosed premises. 73 B.R. at 307–08.

Section 108(b) of the Bankruptcy Code extends relevant state law redemption periods as follows:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixed a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

Both the Standing Trustee and counsel for the debtors herein argue that in a presheriff sale foreclosure proceeding context § 108(b) has no application, and the bankruptcy court, in the absence of a definite state court redemption period should not impose a 60 day time period for redemption under a Chapter 13 plan. This argument must be analyzed in the context of both state and federal bankruptcy law.

The Third Circuit in *Roach* found that 11 U.S.C. § 362(a) did not toll the running of the state law redemption period, and that under the facts of that case, where the

debtors filed their bankruptcy petition following foreclosure sale but before the expiration of the 10–day state law redemption period following the sale, the debtors' state law right of redemption lapsed after 60 days following the filing of their bankruptcy petition. *See Roach, supra,* 824 F.2d at 1372, note 1.[41] *Accord Matter of Tynan,* 773 F.2d 177, 179–80 (7th Cir.1985). *Johnson v. First National Bank of Montevideo, Minnesota,* 719 F.2d 270, 278 (8th Cir. 1983), *cert. den.,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Martinson,* 731 F.2d 543, 544 (8th Cir.1984).

In the cases at bar, the debtors, having filed their bankruptcy petitions after foreclosure judgment and before sale, have the state statutory redemption period available to them to effectuate a redemption of the subject properties. Under New Jersey law the date of the sheriff's sale controls the time period during which a mortgagee can redeem real property, that being 10 days following sale. Section 108(b) in and of itself does not disturb the running of that time period, except that it allows a debtor at least 60 days to effectuate that redemption. *See Roach, supra. See also First Insurance Savings and Loan v. Winkler,* 29 B.R. 771, 776 (N.D.Ill.1983).

When a creditor's claim is secured only by a security interest in real property that is the debtor's principal residence, a Chapter 13 plan is barred from "modifying" the rights of a secured creditor. 11 U.S.C. § 1322(b)(2). The plans presented before this court propose various methods of paying off the principal amount due on the foreclosure judgments or the asserted "value" of that judgment over periods ranging from 180 days to five years. This court, must, then decide whether the plans will so affect the creditors' rights that it would amount to "modifying" them in violation of § 1322(b)(2).

The Ninth Circuit in the case of *In re Seidel,* 752 F.2d 1382 (9th Cir.1985) examined the limits of § 1322(b)(2). In that

**41.** The Third Circuit in its decision noted that the parties erred in focusing on how much of a property interest the Roaches retained following the foreclosure sale since the relevant text of 11 U.S.C. § 1322(b) deals with obligations of the debtor as to which cure of a default is authorized, not of the property interests of the debtor in property pledged to secure those obligations. *See Matter of Roach, supra,* 824 F.2d at 1372, n. 1.

case, the debtors had purchased a home. A promissory note secured by a mortgage was given in partial payment. The note provided for interest-only payments for a period of three years at which time the principal in full would come due. The purchasers defaulted when the principal came due, and the sellers commenced foreclosure proceedings in the Oregon state courts. Prior to final judgment of foreclosure and sale, the purchasers filed a Chapter 13 petition and plan. Under the plan the purchasers proposed to pay the debt, then in default, in sixty monthly installments, culminating in a final balloon payment of $4,000.00. The bankruptcy court denied confirmation of the plan finding that the plan attempted to modify the rights of creditors in violation of 11 U.S.C. § 1322(b)(2). This decision was affirmed by the district court and the purchasers appealed. The Seventh Circuit found that the plan modified the creditors' rights in violation of § 1322(b)(2) and that the "cure" provisions of § 1322(b)(3) and § 1322(b)(5) were inapplicable where a debt had reached its maturity date in the absence of acceleration, prior to the filing of the Chapter 13 petition. *In re Seidel, supra*, 752 F.2d at 1383.

The debtors argue herein that there is no alteration of the creditors' rights which can be considered a "modification" where the plan proposes to pay the creditor the amount of his claim, plus interest over the life of the plan.

The *Seidel* court set forth a detailed analysis of § 1322(b)(2) as it applied to the facts of that case as follows:

> When applying section 1322(b) to already-matured debts, courts have held that "by in effect creating a new payment schedule, such action would clearly involve 'modifying' the rights of the mortgagee." *In re Maloney*, 36 B.R. 876, 878 (Bankr.D.N.H.1984); *see In re Fontaine*, 27 B.R. 614 (Bankr.App. 9th Circuit. 1982); *see also In re Gwinn*, 34 B.R. 936, 944 (Bankr.S.D. Ohio 1983) (an extension of the period to make payments is a "basic or important change" that would modify creditors' rights in violation of subsection b(2)(7). Thus,

when a plan would extend the time for payment beyond the time originally contemplated by the creditor, the creditor's rights are being "modified" and the plan should not be confirmed.

Other courts have held that no alteration of the creditor's rights will be considered a "modification," so long as a creditor receives regular payments and ultimately receives "100% of what he is due plus accruing interest up until the time of payment." *In re McSorley*, 24 B.R. 795, 798 (Bankr.D.N.J.1982); *In re Simpkins*, 16 B.R. 956, 964 (Bankr.E.D. Tenn.1982). These cases have upheld plans for debts naturally maturing before filing of the Chapter 13 petition, *see In re McSorley*, and for debts maturing after filing but before confirmation of the plan, *see In re Simpkins*. So long as those plans gave the creditor the amount of his claim plus interest, and maintained a schedule of regular payments, they have been confirmed—even though the debtor ended up receiving money after the time originally contemplated by the debt contract.

.    .    .    .    .

Instead of viewing the power to modify as "the alteration ... of [any] provisions of the secured creditors' contract," Bankruptcy Laws Commission's Report, H.R.Doc. No. 137, pt. 2, 93rd Cong., 1st Sess. 205 (1973), *reprinted in Collier on Bankruptcy* App. 2 at 205, however, some courts suggest that modification means only the altering of the system of regular installment payments originally set up by the debt contract. *See Grubbs*, 730 F.2d at 245; *In re McSorley*, 24 B.R. at 798; *In re Simpkins*, 16 B.R. at 964; *accord, In re Clark*, 738 F.2d [869] at 873–74 [7th Cir.1984]; *In re Carr*, 36 B.R. 381, 383–84 (Bankr.N.D.Ga.1984). So long as a Chapter 13 plan maintains regular installment payments, these courts hold, the plan is not "modifying" creditors' rights, and it can be confirmed —even though the creditor will not receive these installment payments until long after the debt naturally matured.

The only support for finding that subsection b(2) is restricted to barring home mortgagors from reducing regular installment payments is the fact that creditor lobbyists were especially fearful that the power of modification might authorize debtors to reduce the amount of installment payments. *Hearings Before the Subcommittee on Improvements of the Judicial Machinery of the Senate Committee on Judiciary.* 94th Cong., 1st Sess. 130 (1975) (Statement of Walter Vaughan on behalf of the American Bankers Association and Consumer Bankers Association). Just because *creditors* perceived the power to modify as *including* the power to reduce installment payments, however, does not mean that *Congress* intended the power of modification to be *restricted* to reducing the amount of installment payments. Instead, the "plain meaning" rule suggests that Congress contemplated a broader, natural meaning for the power to modify —including, among other things, the power to delay payments on an already-matured debt. "Very strong" evidence or explicit language from legislative history is necessary to overcome the plain meaning naturally to be drawn from the language of the statute. *See Tulalip Tribes of Washington v. FERC,* 732 F.2d 1451, 1455 (9th Cir.1984); *Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868, 873 (9th Cir.1981).

. . . . .

In addition to the general legislative purpose, however, we must also consider contrary legislative intent. In the specific context of subsection b(2), an amendment was added to protect home lenders, rather than home owners, by prohibiting home owners from modifying debts wholly secured by home mortgages. *Grubbs,* 730 F.2d at 245; *Matter of LaPaglia,* 8 B.R. 937, 940 (Bankr.E.D.N.Y.1981); *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 189 (Bankr.N.D. Fla.1980). This deliberate alteration of the statute's general protection of the debtor is a more precise barometer of congressional intent in this particular context. It indicates here that a debtor

should not be able to use section 1322(b) to delay payment of a debt which has already come naturally due.

752 F.2d at 1383–85.

The *Seidel* court distinguished its case, where the plan extended the time for complete payment of the note far beyond the time originally contemplated, from those cases where a debt came due before the filing of the Chapter 13 petition only because a creditor had accelerated the entire debt after default in installment payments. *In re Seidel, supra,* 752 F.2d at 1383, *citing In re Clark,* 738 F.2d 869 (7th Cir. 1984); *Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir. 1984) (en banc); *In re Taddeo,* 685 F.2d 24 (2d Cir.1982).

Courts have differed on the ability of debtors through a Chapter 13 plan to pay from future income over the term of the plan a matured pre-petition obligation. The Fifth Circuit in the case of *Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir.1984) in the context of its review of the legislative history of § 1322(b)(2) and § 1322(b)(5) found that:

> [T]he final amendments to subsection (b)(2) and (b)(5) of § 1322, did not, with regard to home mortgages, affect the general provisions of Chapter 13, *see* § 1322(a), that permitted a petitioner's plan to pay from future income over the term of the plan any matured pre-petition obligations, whether secured or unsecured; nor did these amendments affect the authorization for a Chapter 13 plan either (1) to cure any default with regard to debts that were provided for by the plan; § 1322(b)(2), or (2) to cure any default within a reasonable time and to maintain payments upon a nondischargeable long-term obligation, whether secured or unsecured, § 1322(b)(5).

730 F.2d at 246.

The Seventh Circuit in *Seidel, supra,* in commenting on the *Grubbs* case stated:

> The view of the Fifth Circuit, however, is unduly narrow and contrary to its own analysis of the legislative history. The

Fifth Circuit bases its view of subsection b(2) on the fact that the drafters of the earliest version of subsection b(2), the Bankruptcy Laws Commission of 1973, had suggested that the power of "modification" included the power to change "the size and timing of installment payments." 730 F.2d at 244. But the Fifth Circuit's own quotation from the Commission's Report continues, "... *as well as the alteration or modification of other provisions of the secured creditors' contract.*" *Id.* (quoting Bankruptcy Laws Commission's Report, H.R.Doc. No. 137, pt. 2, 93rd Cong., 1st Sess. 205 (1973), reprinted in Collier on Bankruptcy App. 2 at 205) (emphasis added)). If the Commission's Report is in fact indicative of subsequent congressional intent, as the Fifth Circuit suggests, any delay in payment—which clearly works an "alteration or modification of other provisions" of the creditor's contract—must be considered a "modification" within the meaning of subsection b(2)'s ban. Thus, subsection b(2) bars a home mortgagor from delaying payment of an already-matured debt.

Our view is supported by other aspects of the legislative history. Subsection b(2) originally permitted a plan to modify the rights of *any* creditor. *Grubbs,* 730 F.2d at 243. When creditors objected, however, the Senate created an exemption that barred modification when claims were "wholly secured by mortgages on real property." *Id.* at 245. This exemption, in turn, was later narrowed to bar modification "*only* as to a claim 'secured only by a security interest in real property *that is the debtor's principal residence.*'" *Id.* at 246 (emphasis in original). This final amendment was "apparently in response to perceptions ... [that] home-mortgagor lenders, performing a valuable social service through their loans, needed special protection against modification thereof." *Id.*

The evolution of subsection b(2), then, shows a deliberate intention by Congress to insulate a certain subset of creditors—those wholly secured by home mortgages—from the general authority to modify

which the Fifth Circuit finds in section 1322(a). This exemption is evident from the ordinary reading of the language of subsection b(2).

We do not ignore those circuits that have held that defaults arising out of the acceleration of home mortgage debts can be "cured" under subsections b(3) and b(5). *In re Clark,* 738 F.2d 869, 874 (7th Cir.1984); *Grubbs v. Houston First Amer. Sav. Ass'n,* 730 F.2d 236 (5th Cir. 1984) (en banc); *In re Taddeo,* 685 F.2d 24, 28 (2d Cir.1982). These decisions, however, cannot be read to authorize the postponement of payments where a debt has already naturally matured, *without acceleration,* prior to the filing of the Chapter 13 petition.

752 F.2d at 1385–86.

In the State of New Jersey, once a final judgment of foreclosure is obtained, the mortgagee's interest in the property includes the right to have the property sold, and upon expiration of the state law redemption period, if the right of redemption is not exercised, the transfer of title to the property to the successful bidder at sale.

The Sixth Circuit in the case of *In re Glenn,* 760 F.2d 1428, (6th Cir.1985) held that under 11 U.S.C. § 1322(b) a Chapter 13 debtor may cure a default on a mortgage on the debtor's principal residence even when the debt has been accelerated and a judgment of foreclosure has been entered, provided that no foreclosure sale has taken place. 760 F.2d at 1442. The *Glenn* court further held that once the property has been sold, the right to cure the default and reinstate the terms of the mortgage under § 1322(b) ceases and that the automatic stay provisions of 11 U.S.C. § 362(a) did not toll or extend the running of state statutory periods of redemption following foreclosure sales. *Id.*

The Third Circuit in *Roach* considered the holding of *Glenn* and rejected it stating:

A panel of the Court of Appeals for the Sixth Circuit, in *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), has taken a different approach. Reaching a result acknowledge to be 'primarily a pragmatic

one,' the court established foreclosure sale as 'the cut-off date of the statutory right to cure defaults' in all states within the circuit. *Id.* at 1435. The court found it unnecessary to refer to the law of those states 'in construing this federal statute,' noting that 'practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next.' *Id.* at 1436.

．　．　．　．　．

Moreover, although we agree with the *Glenn* court that pragmatic considerations are important in construing the Bankruptcy Code, the more substantial practical concerns it cites do not seem to us to favor foreclosure sale over foreclosure judgment as a cutoff point. Finally, nothing in the text of the statute supports the choice of foreclosure sale as the terminating event. When a traditional application of the text of the Bankruptcy Code to the property interest defined by state law yields an answer that will serve the objectives of the Code, we decline to adopt, in the name of pragmatism, an answer not grounded in the language of the statute.

824 F.2d at 1379.

The *Glenn* court considered the issue of whether debtors who after sale of the property could not reinstate the terms of their mortgage under 11 U.S.C. § 1322(b)(5) were nonetheless permitted under § 1322(b)(3) to spread payment of the redemption price over the entire length of their Chapter 13 plan. 760 F.2d at 1441–42. That analysis, although premised upon a different cut-off point for a Chapter 13 debtor's statutory right to cure defaults, than that employed by the *Roach* court, that being the point of sale rather than the point of foreclosure judgment, is nonetheless instructive. The *Glenn* court stated:

Although it is possible, in theory, to hold that a Chapter 13 debtor is entitled to pay the redemption amount over the life of his plan and also to hold that the statutory redemption period is not tolled by the bankruptcy proceeding, the practical effect of allowing the debtor to pay the redemption amount over an extended period would in many respects be the same as a suspension of the redemption period. Furthermore, most of the considerations that cut against allowing the debtor to reinstate the mortgage terms after a foreclosure sale also argue against allowing the debtor to pay off the redemption amount over the life of the plan. We, therefore, decline to accept this view.

760 F.2d at 1442.

In the case of *In re Collins*, 19 B.R. 209 (Bankr.S.D.Fla.1982), the debtors filed their Chapter 13 petition subsequent to the institution of foreclosure proceedings by the secured creditor and subsequent to the entry of a foreclosure decree in favor of that creditor in the sum of $17,742.00. The debtors in their Chapter 13 plan proposed to pay the decreed lien, together with twelve (12) percent interest, over a period of five years through monthly payments. In that case the creditor came within the terms of § 1322(b)(2) prohibiting modification of the rights of secured creditors whose claim is secured only by a security interest in the debtors' principal residence. The court there, dismissed the petition finding in part:

Clearly, the mortgagee's right to proceed now to foreclosure sale and thus satisfy its $17,742 foreclosure decree would be substantially modified by a proposal to satisfy the decree in monthly payments over the next five years. The debtors concede that the property is worth at least $35,000.00. I take note of the fact that current mortgage interest rates in this area exceed 16 percent. The plan does not even provide that the mortgagee could retain its lien. Section 1325(a)(5)(B)(i).[42]

The plans proposed in these cases affect an unauthorized modification of the respective creditors' rights created by the final state court foreclosure judgment. Accordingly, the respective plans do not comply

---

**42.** *See* footnote 39, *supra* for text of 11 U.S.C. § 1325(a)(5).

with the provisions of § 1322(b)(2) and confirmation of all of these plans shall be denied.[43]

In regard to the cases of *In re Barry McKeon and Deborah McKeon, In re Charles L. Martin, Jr. and Barbara Martin,* and *In re Arlene Payne,* wherein the creditors have filed motions requesting relief from the automatic stay of the Bankruptcy Code § 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The secured creditors' interests in the subject properties includes the right to immediate sale of the property and, upon the expiration of the state law redemption period, if the right of redemption is not exercised, the transfer of title to the property to the successful bidder at sale.

■ No ingredient in the plans before this court adequately protect the secured creditors' right in the property but instead impermissibly modifies those rights in violation of 11 U.S.C. § 1322(b)(2). Therefore, "cause" exists in all three cases for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

In the case of *In re Clarence Michael Stokes and Jannas Ann Stokes,* the debtors seek to reinstate their Chapter 13 petition based upon their modified plan filed herein. This court has denied confirmation of the debtors' modified plan accordingly will deny the debtors' motion to reinstate

their petition based upon its finding in this opinion that the proposed modified plan does not comply with § 1322(b)(2).

Orders in accordance with this decision shall be submitted.

---

**43.** 11 U.S.C. § 1325(a) provides in relevant part that:

(a) Except as provided under subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title.